(No. 52482.—▮▮▮▮▮▮▮▮)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. MICHAEL YOUNG, Appellee.

*Opinion filed October 17, 1980.*

MORAN, J., concurring in part and dissenting in part.

William J. Scott, Attorney General, of Springfield, and Jordan Gallagher, State's Attorney, of Sycamore (Donald B. Mackay, Melbourne A. Noel, Jr., Susan M. Sherwin, and Jonathan Strauss, Assistant Attorneys General, of Chicago, and Phillis J. Perko and Jan Tuckerman, of the State's Attorneys Appellate Service Commission, of Elgin, of counsel), for the People.

Ralph Ruebner, Deputy Defender, and Richard E. Cunningham, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

We granted the State leave to appeal from an order of the appellate court (76 Ill. App. 3d 210) dismissing its interlocutory appeal from a pretrial order that "suppressed" certain evidence the State intended to introduce at trial. The issue before us is whether our Rule 604(a)(1) (73 Ill. 2d R. 604(a)(1)) permits the State to appeal from a pretrial order excluding evidence on grounds other than that the evidence was obtained as the result of an unlawful search and seizure or an involuntary confession.

The defendant, Michael Young, was charged in the circuit court of De Kalb County with leaving the scene of an accident and driving too fast for conditions in violation of sections 11—401(a) and 11—601(a) of the Illinois Vehicle Code (Ill. Rev. Stat. 1977, ch. 95½, pars. 11—401(a), 11—601(a)). The circumstances under which defendant's report of that accident and statements to the police were made are detailed in the appellate court opinion.

Prior to trial defendant moved "to suppress any statement or report made by defendant Young concerning the accident which is the basis of this prosecution." Defendant's motion was based on section 11—401(b) of the Illinois Vehicle Code (Ill. Rev. Stat. 1977, ch. 95½, par. 11—401(b)). Section 11—401 provides:

"Sec. 11—401. Accidents involving death or personal injuries.

(a) The driver of any vehicle involved in an accident resulting in injury to or death of any person shall immediately stop such vehicle at the scene of such accident, or as close thereto as possible and shall then forthwith return to,

and in every event shall remain at, the scene of the accident until he has fulfilled the requirements of Section 11—403. Every such stop shall be made without obstructing traffic more than is necessary.

(b) Any person who has failed to stop or to comply with said requirements shall, within 48 hours after such accident, or, if hospitalized and incapacitated from reporting at any time during such period, within 48 hours after being discharged from the hospital, report the place of accident, the date, the approximate time, his name, address, the registration number of the vehicle driven, and the names of the occupants, if any, of such vehicle, at a police station or sheriff's office near the place where such accident occurred. No report made as required under this Subsection shall be used, directly or indirectly, as a basis for the prosecution of any violation of Subsection (a) of this Section.

(c) Any person failing to comply with Subsection (a) of this Section shall be guilty of a Class A misdemeanor.

(d) Any person failing to comply with Subsection (b) of this Section shall be guilty of a Class 4 felony."

Defendant contended that the immunity provision embodied in the last sentence of section 11—401(b) precluded the State from using any of the information in the reports against him.

After a hearing on the motion the trial court ordered that "all statements made by defendant Young as required by ch. 95½, sec. 11—401 to 11—416 are suppressed, and the court finds that the statements attributed to defendant Young in the evidentiary hearing were those made pursuant to the requirements of ch. 95½, sec. 11—401 *et seq.*" In dismissing the appeal the appellate court reasoned that the decision of this court in *People v. Van De Rostyne* (1976), 63 Ill. 2d 364, as well as several decisions by the appellate court, indicates that Rule 604(a)(1) authorizes an appeal from an order suppressing evidence only when the evidence was obtained as the result of an unlawful search and seizure or an involuntary confession. (See Ill. Rev. Stat. 1977, ch. 38, pars. 114—11, 114—12).)

Since neither of those circumstances was alleged in this case, the appellate court dismissed the appeal.

The extent of the State's ability to take an appeal in criminal cases has expanded dramatically in the last 50 years. The Illinois Constitution of 1870 accorded the legislature the authority to prescribe the jurisdiction of the appellate courts. (Ill. Const. 1870, art. VI, sec. 11.) In exercising that authority, the legislature decided that "in no criminal case shall the people be allowed an appeal, writ of error or new trial." (Ill. Rev. Stat. 1874, ch. 38, par. 437.) This remained the rule until 1933, when the legislature allowed the State to appeal from "any order or judgment quashing or setting aside an indictment or information." (1933 Ill. Laws 465-66, Ill. Rev. Stat. 1933, ch. 38, par. 747.) The scope of permissible appeals was again expanded in 1961 to also allow the State an inter-locutory appeal of "any order or judgment quashing an arrest or search warrant or suppressing evidence entered preliminary to trial," although the State was still precluded from obtaining a new trial. 1961 Ill. Laws 2453, Ill. Rev. Stat. 1961, ch. 38, par. 747.

Shortly thereafter, the 1964 amendments to the judicial article of our 1870 Constitution authorized this court to "provide by rule for appeals to the Appellate Court from other than final judgments of the Circuit Court." (Ill. Const. 1870, art. VI (1964), sec. 7.) The same amendment also carried forward the provision that "after a trial on the merits in a criminal case, no appeal shall lie from a judgment of acquittal." (Ill. Const. 1870, art. VI (1964), sec. 7.) Subsequently, this court adopted our Rule 27(4) (28 Ill. 2d R. 27(4)), which provided:

"(4) In criminal cases the State may appeal only from an order or judgment, the substantive effect of which results in dismissing an indictment, information or complaint; arresting judgment because of a defective indictment, information or complaint; quashing an arrest

or search warrant; or suppressing evidence. The procedure in appeals by the State shall be as provided in these rules."

Unlike the 1961 statute, this rule did not purport to limit appeals to pretrial orders. The above-quoted 1964 amendment to the State Constitution and double jeopardy considerations, of course, precluded the State from appealing an acquittal.

The 1970 Constitution confirmed the authority of this court to determine the scope of appeals from other than final judgments. (Ill. Const. 1970, art. VI, sec. 6; see also *People v. Taylor* (1972), 50 Ill. 2d 136, 139-40.) That authority, of course, remains subject to the limitations of the double jeopardy clauses (U. S. Const. amends. V, XIV; Ill. Const. 1970, art. I, sec. 10). Under that authority this court has carried the contents of former Rule 27(4) into our current Rule 604(a)(1) in substantially unaltered form:

"(1) *When State May Appeal.* In criminal cases the State may appeal only from an order or judgment the substantive effect of which results in dismissing a charge for any of the grounds enumerated in section 114—1 of the Code of Criminal Procedure of 1963; arresting judgment because of a defective indictment, information or complaint; quashing an arrest or search warrant; or suppressing evidence." 73 Ill. 2d R. 604(a)(1).

Under the 1970 Illinois Constitution, the final authority to prescribe the scope of interlocutory appeals by the State in a criminal case rests exclusively with this court (*People v. Taylor* (1971), 50 Ill. 2d 136, 139-40), and whether a particular order may be appealed depends solely upon our construction of our Rule 604(a)(1).

The bare language of the rule—"an order or judgment the substantive effect of which results in *** suppressing evidence"—appears to allow an appeal from any order precluding the admission of evidence. The courts of this State, however, have uniformly rejected such a broad interpretation. In its stead they have substituted a variety of rules

which confine more narrowly the State's right to appeal. In *People v. Stuckey* (1979), 78 Ill. App. 3d 1085, the court held that an order precluding the admission of evidence was appealable whenever the trial court's decision was based on the desire to deter unacceptable police conduct rather than on an evaluation of the evidentiary value of the proffered items or testimony. In *People v. Koch* (1973), 15 Ill. App. 3d 386, and *People v. Shipp* (1968), 96 Ill. App. 2d 364, the courts indicated that the State could appeal whenever an evidentiary ruling had the effect of blocking the prosecution. This rationale seemed to be based more on the language of Rule 604(a)(1) that allows appeal from an order dismissing a case than on the "suppressing evidence" language. In *People v. Flatt* (1979), 75 Ill. App. 3d 930, *vacated and remanded* (1980), 82 Ill. 2d 250, the appellate court held that an order suppressing evidence is appealable whenever the order is based on constitutional considerations. The fourth alternative, allowing appeal only when the order excluding evidence is based on the involuntariness of a confession or the illegality of a search and seizure, is predicated primarily on the language of this court's opinion in *People v. Van De Rostyne* (1976), 63 Ill. 2d 364.

In *Van De Rostyne* the defendant was charged with driving while intoxicated. After the jury was impaneled but before any evidence was introduced, the defendant moved to suppress the results of a breathalyzer test on the ground that the test had not been correctly administered in accord with prescribed regulations. The State failed to introduce the instructions for operating the breathalyzer unit, and the trial court granted the motion. After the State indicated its intention to appeal, the trial court declared a mistrial to allow that action. The State then appealed, and, in oral arguments before the appellate court, the defendant conceded that the test had in fact been properly administered.

The appellate court allowed the appeal on the ground that the trial court's order had the effect of blocking the prosecution. Given the defendant's concession, the appellate court therefore reversed the trial court's order. *People v. Van De Rostyne* (1974), 26 Ill. App. 3d 1048, *aff'd* (1976), 63 Ill. 2d 364.

This court affirmed that result, but for substantially different reasons. The *Van De Rostyne* opinion indicated several considerations relevant to the court's approach in such cases, but as pointed out in our opinion in *People v. Flatt* (1980), 82 Ill. 2d 250, the ultimate holding in *Van De Rostyne* was not predicated on any of those considerations. Rather, the court simply held that defendant had misled the trial judge by labeling his motion a "Motion to Suppress" and should not be allowed to profit by his error. The court did indicate it disfavored grounding the State's right to appeal under the "suppressing evidence" clause on the effect of the exclusion order on the prosecution because, as the court reasoned, the trial judge is not in a position before hearing the State's case to determine the effect on the prosecution of excluding a particular piece of evidence. Citing *People v. Thady* (1971), 133 Ill. App. 2d 795, and *People v. Koch* (1973), 15 Ill. App. 3d 386, the court also indicated that the "motion to suppress," the title given by the defendant to his motion, was intended only to reach illegally obtained evidence and that Rule 604 should not be interpreted to allow an interlocutory appeal from every ruling excluding evidence offered by the prosecution. Those expressions, unnecessary to the holding, did influence later appellate court opinions even though the *Van De Rostyne* court emphasized that the factual situation there was unique.

Several of those appellate court decisions interpreted *Van De Rostyne* to preclude appeal from orders excluding evidence on grounds other than the illegality of a search and seizure or the involuntariness of a confession regard-

less of whether the order was made before the trial (*People v. Phipps* (1979), 79 Ill. App. 3d 532; *People v. Eddington* (1977), 47 Ill. App. 3d 388; *People v. Lara* (1976), 44 Ill. App. 3d 116) or during the trial (*People v. Jackson* (1979), 67 Ill. App. 3d 24; *People v. Young* (1978), 60 Ill. App. 3d 49). To the extent that these cases have stated a rationale for that rule, they have echoed the observations of *Van De Rostyne*. To allow the State to appeal from every evidentiary ruling would produce prolonged and disjointed trials. (*People v. Jackson* (1979), 67 Ill. App. 3d 24.) Moreover, predicating the right of the State to appeal on the effect of an exclusion on the State's case would impose a heavy burden on the court which had to make that determination. (*People v. Lara* (1976), 44 Ill. App. 3d 116.) As noted above, other courts have not interpreted *Van De Rostyne* so narrowly. (*People v. Stuckey* (1979), 78 Ill. App. 3d 1085; *People v. Flatt* (1979), 75 Ill. App. 3d 930, *vacated and remanded* (1980), 82 Ill. 2d 250.) In still other cases the court has considered issues on the merits in appeals which would not have been allowed under the narrow intepretation of *Van De Rostyne* had the defendant raised that question. *People v. Kezerian* (1979), 77 Ill. 2d 121; *People v. Petru* (1977), 52 Ill. App. 3d 676.

We do not now disavow the concerns expressed by this court in *Van De Rostyne*, nor do we disagree with the final disposition of that case. We do believe, however, that the 1970 Constitution, by granting this court the power to define the scope of interlocutory appeals, imposed on us the obligation to evaluate the interests of defendants, the judicial system, and society as a whole in exercising that authority. Our Rule 604 was adopted with that responsibility in mind and must be interpreted accordingly. A construction which mechanically limits exclusionary orders appealable under the "suppressing evidence" clause to those which suppress illegally obtained evidence

would, of course, abdicate that responsibility. As earlier indicated, the broad language of *Van De Rostyne* that suggests such an interpretation was not essential to the disposition of that case. In *Van De Rostyne* this court was confronted with an appeal from an ongoing trial, and that opinion properly reflected a reluctance to allow such appeals. There are, however, substantial differences in the effects of the pretrial appeal with which we are concerned and the appeal during trial in *Van De Rostyne*. The broad language which has been interpreted by some appellate courts to limit interlocutory appeals only to suppressions based on the illegality of a search and seizure or the involuntariness of a confession was based not upon an evaluation of the significant differences between pretrial appeals and those during trial but upon the analysis in *People v. Thady* (1971), 133 Ill. App. 2d 795, of the effect of certain statutes on this court's ability to regulate appeals, and *Thady's* questionable view of the effect of those statutes.

The *Thady* court grounded its interpretation of Rule 604(a)(1) on the mistaken belief that the ultimate authority for regulating the scope of interlocutory appeals in criminal cases resided in the legislature rather than in this court. That view is not compatible with our present constitution as we pointed out in *People v. Jackson* (1977), 69 Ill. 2d 252, and *People v. Taylor* (1971), 50 Ill. 2d 136. In those cases we clearly indicated that the authority of this court to regulate procedure, particularly in the realm of appeals, was supreme. As we indicated above, the 1970 Constitution makes this court the final arbiter of the scope of interlocutory appeals.

In evaluating the interests involved in interlocutory appeals, it is obvious that an innocent defendant in a criminal case has a strong interest in the swift resolution of his case. Even the guilty defendant may well have an interest in avoiding the expense and hardship of an un-

necessarily prolonged trial. This interest is reflected to some extent in the speedy trial statute (Ill. Rev. Stat. 1977, ch. 38, par. 103–5), although that statute does toll the 120-day limit during the pendency of an interlocutory appeal. The hardship attendant to an interlocutory appeal is diminished to some extent by subsection (a)(3) of Rule 604 (73 Ill. 2d R. 604(a)(3)), which provides that a defendant shall not be held in jail or to bail during such an appeal in the absence of a compelling reason to do so. Too, the defendant's interests are not affected to the same extent by the appeal of a pretrial order as they are by an appeal which interrupts an ongoing trial. In the former situation the defendant is not subject to the additional strain and expense inherent in recommencing a case after the appeal has been determined. Finally, the defendant's most vital interests are protected by the double jeopardy clauses.

As the *Van De Rostyne* opinion acknowledges, our determination of the scope of interlocutory appeals will also affect the orderly functioning of the judicial system. To the extent that interlocutory appeals are allowed, the trial process will be disrupted. The degree of disruption will, of course, be less if the appeal is taken before rather than after the commencement of trial.

In another sense, however, allowing interlocutory appeals may actually enhance the functioning of the judicial system. In the absence of interlocutory appeals, the proscriptions of the double jeopardy clauses would preclude reviewing courts from considering legal issues that would otherwise be raised by the State. Errors favoring defendants would pass uncorrected, while those which favored the State would be rectified. To the extent that such errors remained unreviewed and proliferated at the trial court level, the development of the law would be distorted. Before the adoption of Rule 604's predecessor, such distortions were particularly problematical in regard

to questions involving searches and seizures and confessions because, to ensure the admissibility of evidence, law-enforcement officials had to conform their conduct to standards whose exact requirements could not be determined. (See President's Commission on Law Enforcement and Administration of Justice, Task Force Report: The Courts 47-48 (1967) (quoted in 3 W. LaFave, Search and Seizure 724-25 (1978)).) The number of suppression orders based on search-and-seizure or involuntary-confession grounds reversed in the years after interlocutory appeal from such orders became available illustrates the value of allowing interlocutory review. (See LaFave, *Search and Seizure: "The Course of True Law \*\*\* Has Not \*\*\* Run Smooth,"* 1966 U. Ill. L.F. 255, 387-88.) Many of the factors noted above, as well as the widely differing rules prevailing in this country, are reviewed in the commentary upon section 1.4 of the American Bar Association Standards Relating to Criminal Appeals, pages 34-38 (1970), dealing with prosecution appeals from pretrial orders. The proposed rule in that section closely parallels that adopted here.

Although the need for interlocutory review may be the most pressing in regard to search-and-seizure and involuntary-confession cases, due to the frequency with which those cases arise and the need of law-enforcement agencies for reliable guidelines, similar considerations also indicate the value of allowing interlocutory review of orders suppressing otherwise probative and admissible evidence. In some instances when trial courts erroneously interpret constitutional or statutory provisions to require the suppression of evidence, those rulings will affect the development of police practices. (See, *e.g., People v. Jackson* (1979), 67 Ill. App. 3d 24.) More importantly and more frequently, however, erroneous exclusionary rulings frustrate the primary purpose of the trial: to ascertain the truth of the charges. Social policies embodied in statutory

or constitutional provisions may justify encumbering the fact-ascertaining process, but the exclusion of otherwise probative and admissible evidence based solely upon an incorrect interpretation of those provisions serves neither the policy represented by the provision nor the public's interest in an accurate resolution of the factual questions involved in the litigation. Permitting such decisions to escape review encourages their proliferation and denies trial courts desirable guidance. Allowing interlocutory review ensures proper application of the governing rules and at the same time protects the ability of the trial court to determine the truth of the factual allegations involved.

Finally, the interests of society in general, as represented by the State in criminal prosecutions, must be considered in construing Rule 604(a)(1). The State's interest is twofold. In the first instance the State must seek in each individual case to introduce all the probative and admissible evidence at its disposal. Refusing to allow interlocutory appeal from orders suppressing admissible evidence may seriously impair the State's ability to present its case. Society also has a broader, secondary interest in the coherent development of the law. As we noted above, without the guidance and uniformity imposed by reviewing courts, erroneous interpretations and rulings may proliferate at the trial court level. That proliferation is particularly troublesome when it is based on extrapolations from the statements or reasoning in prior appellate decisions which are interpreted to compel results in different circumstances which the prior appellate decision did not contemplate. In the absence of appeal, the reviewing court may have no opportunity to clarify its earlier decisions. (See LaFave, *Search and Seizure: "The Court of True Law \*\*\* Has Not \*\*\* Run Smooth,"* 1966 U. Ill. L.F. 255, 388.) The denial of review in a particular case may thus affect not only the ability of the State to prosecute a particular case but also its ability to prosecute similar

cases in the future. See ABA Standards, Criminal Appeals sec. 1.4, Commentary, at 38(1970).

After weighing these considerations, we conclude that the State should be allowed to appeal from a pretrial suppression order which substantially impairs its ability to prosecute the case involved. To the extent that *Van De Rostyne* may be read to the contrary it is overruled. The difficulties posed by allowing such appeals, we believe, are outweighed by the need to ensure the accurate interpretation of constitutional and statutory provisions and to protect the ability of the trial process to ascertain the truth of the factual allegations involved in a criminal trial. Pretrial appeals would not be necessary to the realization of these goals if the double jeopardy clauses did not prohibit the retrial of a defendant after an acquittal. Since they do, however, we believe our holding best accommodates the interests of defendants, the judicial system, and society as a whole.

We hold, therefore, that Rule 604(a)(1) allows an interlocutory appeal by the State of a pretrial suppression order whenever the prosecutor certifies to the trial court that the suppression substantially impairs the State's ability to prosecute the case. Our intention in requiring this certification is not to formulate a standard by which courts may determine the appealability of a particular order. As this court noted in *Van De Rostyne*, that would indeed be a heavy burden, one which we do not believe justified by the marginal diminution in the number of appeals which we anticipate such a procedure would produce. Instead we rely solely upon the good-faith evaluation by the prosecutor of the impact of the suppression order on his case. We are not unmindful that in the heat of the adversarial process a State's Attorney may attach to a suppression order a degree of significance which a less involved evaluator would not accord it. On the whole, however, we believe that the State's need to allocate its

heavily taxed resources in the most productive manner will naturally limit appeals to those orders which substantially impair its ability to prosecute its case. The prevention of those few appeals which constitute exceptions to this general rule does not, in our judgment, justify the expenditure of the judicial resources necessary to evaluate the effect of the suppression in every instance.

The practicality of this approach is supported by the Federal procedure. The Federal rule is:

"An appeal by the United States shall lie to a court of appeals from a decision or order of a district courts [*sic*] suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding." (18 U.S.C. sec. 3731 (1976).)

The intent of this provision, as stated by the United States Supreme Court in *United States v. Helstocki* (1979), 442 U.S. 477, 487 n.6, 61 L. Ed. 2d 12, 22 n.6, 99 S. Ct. 2432, 2439, n.6, was to allow any appeal not inconsistent with the double jeopardy clause. Our review of the Federal cases under this provision has not revealed any attempt to limit that breadth by evaluating the validity of the prosecutor's certification. In fact, in *United States v. Comiskey* (7th Cir. 1972), 460 F.2d 1293, 1297-98, the court held that a mere recital of the statutory language in the certification without the allegation of an evidentiary basis is sufficient. As we indicated above, the State's need to employ its prosecutorial resources in the most productive manner should be sufficient in most instances to prevent appeal from insignificant orders. The Federal practice also implicity relies on that natural selection process.

The certification requirement we have stated is effec-

tive immediately. For any case currently in the appellate process, however, it is waived. Accordingly, we vacate the order of the appellate court dismissing the appeal and remand the cause to that court for an evaluation of the merits of the appeal.

*Vacated and remanded.*

MR. JUSTICE MORAN, concurring in part and dissenting in part:

I concur in the judgment that allows the State to appeal a pretrial suppression order; however, I dissent from the procedure adopted in accomplishing this result.

By today's ruling, the State, in its sole discretion and as a matter of right, will be allowed to appeal any pretrial suppression order whenever the prosecutor certifies to the trial court that such order substantially impairs the State's ability to further prosecute its case. In doing so, the court has intentionally and expressly refused to adopt any objective standard or define the term "substantial impairment."

Instead, the majority relies upon (1) the good-faith evaluation of the prosecutor and (2) the State's need to allocate its heavily taxed resources as the only deterrent against possible abuse of discretion on the part of the prosecutor.

Contrary to the beliefs and assumptions expressed in the opinion that only a minimal number of appeals by certification will be forthcoming, I foresee an upsurge in frivolous appeals being added to the voluminous case load presently pending in each district of the appellate court.

To guard against the possibility of any abuse of discretion on the part of the State, I would propose that the prosecutor petition the appellate court for leave to appeal in the same manner employed under Rule 306 in civil cases. This procedure would require the State to divulge

the reason or reasons as to why the suppression order substantially impairs its ability to proceed in prosecution of a case.

Petitions under Rule 306 are promptly acted upon by the appellate court. In those instances where the State is unable to establish that the suppression order creates a substantial impairment, the petition would be denied and trial of the case thereby hastened.