THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
JOHN EDWARD JONES, Defendant-Appellee.

Fourth District    No. 16980

Opinion filed December 15, 1981.

Ronald C. Dozier, State's Attorney, of Bloomington (Robert J. Biderman and Larry Wechter, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Daniel D. Yuhas and Gary R. Peterson, both of State Appellate Defender's Office, of Springfield, for appellee.

JUSTICE LONDRIGAN delivered the opinion of the court:

The State appeals the trial court's order suppressing evidence that had been seized as a result of two searches of the defendant's car. Besides the merits of that order this appeal also raises a jurisdictional question regarding the steps taken by the State to present this issue here for review.

I

*People v. Young* (1980), 82 Ill. 2d 234, 412 N.E.2d 501, requires that the State, as a prerequisite to taking an interlocutory appeal of an order

suppressing evidence, certify to the trial court that the suppression will substantially impair prosecution of the defendant. Several months after filing its notice of appeal the State moved in this court to supplement the record with a certificate of impairment signed by the McLean County state's attorney. The defendant objected to this motion, arguing that the certificate is jurisdictional and must be entered in the trial court record before a notice of appeal is filed. We ordered that the question be taken with the case.

*Young* involved reports made to police by a person who had been in an auto accident. The defendant, charged with leaving the scene of an accident and driving too fast for conditions, sought to suppress his statements under section 11—401(b) of the Illinois Vehicle Code (Ill. Rev. Stat. 1977, ch. 95½, par. 11—401(b)), which requires drivers who have had an accident involving personal injury or death to report certain details to the police; the last sentence of (b) prohibits the use of these reports in prosecutions for leaving the scene. The trial court granted the defendant's pretrial motion to suppress. The appellate court dismissed the State's appeal, concluding that Supreme Court Rule 604(a)(1) (73 Ill. 2d R. 604(a)(1)) permits appeals only from evidence derived from illegal searches and seizures and involuntary confessions. The supreme court framed the question in the following way:

> "The issue before us is whether our Rule 604(a)(1) (73 Ill. 2d R. 604(a)(1)) permits the State to appeal from a pretrial order excluding evidence on grounds other than that the evidence was obtained as the result of an unlawful search and seizure or an involuntary confession." (82 Ill. 2d 234, 236, 412 N.E.2d 501, 502.)

The short answer to this question is "yes." First the court observed that "[t]he extent of the State's ability to take an appeal in criminal cases has expanded dramatically in the last 50 years" (82 Ill. 2d 234, 238, 412 N.E.2d 501, 503) and summarized the expansion in the sorts of cases that the State may appeal and the development of the court's rulemaking authority. Supreme Court Rule 604(a)(1) lists the types of adverse rulings that the State may appeal:

> "In criminal cases the State may appeal only from an order or judgment the substantive effect of which results in dismissing a charge for any of the grounds enumerated in section 114—1 of the Code of Criminal Procedure of 1963; arresting judgment because of a defective indictment, information or complaint; quashing an arrest or search warrant; or suppressing evidence." (73 Ill. 2d R. 604(a)(1).)

*Young* held "that Rule 604(a)(1) allows an interlocutory appeal by the State of a pretrial suppression order whenever the prosecutor certifies to the trial court that the suppression substantially impairs the State's ability

to prosecute the case." (82 Ill. 2d 234, 247, 412 N.E.2d 501, 507.) This requirement was "effective immediately" except for cases already on appeal. 82 Ill. 2d 234, 248-49, 412 N.E.2d 501, 508.

The State first argues that it need not certify substantial impairment when the trial court decides to suppress the evidence because it was obtained through an involuntary confession or an unlawful search or seizure—that is, in those cases that the State has traditionally been allowed to appeal. The State would limit the certification requirement to cases when the evidence has been suppressed for other, nontraditional reasons, such as that involved in *Young*.

*Young* does not make this distinction, however. *Young* first describes how the appellate court has erroneously limited the cases appealable by the State under Supreme Court Rule 604 and then discusses the policy reasons supporting the broader view of which suppression orders are properly appealable. Both parts of the opinion indicate that the court is correcting a misunderstanding and not creating a new rule applicable only to newly permitted appeals. On its face, Rule 604(a)(1) allows appeals from all orders barring the use of evidence, but the decisional law has not accepted this view; appellate court opinions have limited appeals by the State to cases when (1) the reason for suppression is to deter police misconduct, (2) the order will "block" the prosecution, (3) the order is based on constitutional reasons, or (4) the evidence was obtained by an illegal search or seizure or an involuntary confession (82 Ill. 2d 234, 240, 412 N.E.2d 501, 504). *People v. Van De Rostyne* (1976), 63 Ill. 2d 364, 349 N.E.2d 16, provided the impetus for the fourth approach. In *Van De Rostyne* the trial court granted the defendant's "motion to suppress" the results of a breathalyzer test during a trial for driving while intoxicated. *Young* explained that in *dictum* there the court had said that the label " 'motion to suppress' * * * was intended only to reach illegally obtained evidence and that Rule 604 should not be interpreted to allow an interlocutory appeal from every ruling excluding evidence offered by the prosecution." (82 Ill. 2d 234, 241, 412 N.E.2d 501, 504.) Some appellate opinions used *Van De Rostyne* to limit orders appealable by the State to those suppressing evidence derived from illegal searches and seizures and involuntary confessions, although not all cases interpreted that decision so narrowly.

*Van De Rostyne* relied in part on *People v. Thady* (1971), 133 Ill. App. 2d 795, 270 N.E.2d 861, which underestimated the supreme court's rulemaking powers. *Thady* limited Rule 604(a)(1) to matters made appealable by the legislature, specifically sections 114—11 and 114—12 of the Code of Criminal Procedure of 1963, dealing with involuntary confessions and illegal searches and seizures respectively (Ill. Rev. Stat. 1969, ch. 38, pars. 114—11, 114—12). See also the discussion of *Thady* in

*People v. Flatt* (1980), 82 Ill. 2d 250, 258-60, 412 N.E.2d 509, 513-14, filed the same day as *Young.*

This summary indicates that *Young* is correcting a misunderstanding and announcing a rule applicable to all suppression orders. Decisions during the 1970s in effect ignored the "bare language" of Rule 604(a)(1) and disregarded the scope of the supreme court's rulemaking power.

In the second section of *Young,* 82 Ill. 2d 234, 243-47, 412 N.E.2d 501, 505-07, the court gives policy reasons to support its departure from tradition. Although interlocutory appeals may increase the time needed to conclude a prosecution and may disrupt "the trial process," they help to correct errors occurring in the trial court and increase the amount of evidence that may be used. These concerns ultimately serve society's interests by insuring that a criminal defendant is faced with all the available admissible evidence and by preventing the proliferation of trial error.

This applies with equal force to the groups of suppression orders that traditionally have been appealable. Here, too, *Young* is intent on correcting a misunderstanding rather than creating a new rule of only limited scope. .

Thus, the State must certify impairment whenever it appeals a suppression order. In permitting the State to appeal suppression orders, Rule 604(a)(1) does not refer to the reason for the suppression or separate the orders into favored and disfavored categories; in explicating the rule *Young* treats all suppression orders alike and does not suggest that the State must file a certificate only in certain cases. We therefore conclude that a certificate of impairment is necessary here.

■■ The next question concerns the timing of the State's certificate here; the State argues that it may file one even after it has filed its notice of appeal. The State relies on Supreme Court Rule 606(a) (73 Ill. 2d R. 606(a)), which provides in part, "No step in the perfection of the appeal other than the filing of the notice of appeal is jurisdictional." This states the effect of a notice of appeal from the standpoint of the appellate court. The defendant counters that filing a notice of appeal divests the trial court of jurisdiction over the case (*Brehm v. Piotrowski* (1951), 409 Ill. 87, 90, 98 N.E.2d 725, 727), expressing the effect of a notice of appeal on a trial court. The defendant concludes that the certificate may not be filed in this court as a supplement to the record; *Young* directs the State to file its certificates in the trial court.

The State points out that the Federal provision analogous to the one in *Young* has not been construed as a jurisdictional requirement. *Young* invites the analogy by referring to the Criminal Appeals Act (18 U.S.C. §3731 (1976)) as evidence of the "practicality" of the certification requirement. The Federal statute permits the government to appeal a pretrial

order suppressing evidence "if the United States Attorney certifies to the district court that the appeal is not taken for the purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding." The Federal law has not been construed as a jurisdictional step, and the Federal government may file its certificate even after it has perfected the appeal from the district court. (*United States v. Fleming* (8th Cir. 1977), 566 F.2d 623.) The defendant argues that the analogy to the Federal procedure is imperfect because the intent in *Young* is to balance the defendant's right to swift prosecution against the State's right to appeal suppression orders. Yet *Young* discusses those concerns not to impose limits on the State's decision to appeal orders but instead to show that the holding rests in part on policy grounds. *Young* does not balance anything, because it holds that the State may always appeal a pretrial order excluding evidence.

Illinois practice also supports the conclusion that the certificate of impairment is not a jurisdictional step and may be filed after perfection of the appeal. The rule that filing a notice of appeal divests a trial court of jurisdiction is invoked when a party tardily requests a trial court to do something that would affect the posture of the case, such as permitting amendment of the pleadings (*Brehm*) or granting a post-trial motion (*Elliott v. Willis* (1980), 89 Ill. App. 3d 1144, 412 N.E.2d 638, *appeal allowed* (1981), 83 Ill. 2d 570). We conclude that because the trial judge has no authority under *Young* to reject the certificate, the State may file it in this court as a supplement to the record. The absence of the certificate is a material omission in the trial court record within the meaning of Supreme Court Rule 329 (73 Ill. 2d R. 329). That rule provides that "[m]aterial omissions or inaccuracies or improper authentication may be corrected by stipulation of the parties or by the trial court, either before or after the record is transmitted to the reviewing court, or by the reviewing court"; Supreme Court Rule 612(g) (73 Ill. 2d R. 612(g)) makes it applicable to the record in criminal appeals. (See also *Ray v. Winter* (1977), 67 Ill. 2d 296, 367 N.E.2d 678 (failure to certify trial court record is not a jurisdictional defect); *People v. Marbly* (1980), 85 Ill. App. 3d 935, 407 N.E.2d 721 (failure to file report of proceeding within given time limit is not jurisdictional).) The certificate of impairment reflects merely the State's decision to appeal the suppression order and is properly considered an omission in the record. See also our discussion of this same issue in *People v. Norris* (1981), 101 Ill. App. 3d 664.

II

The State attacks the merits of the suppression order. The defendant was charged with possession of burglary tools and attempted theft;

before trial he moved to suppress evidence, boltcutters, which the police had seized after searching the trunk of his car twice. The first search occurred when the police stopped the defendant in his car; they saw the boltcutters then but did not take them until later, while the car was being held at a towing yard after the police had taken into custody the defendant and the passenger in his car. The police did not have a warrant for either of the searches.

The trial judge granted the defendant's motion to suppress the evidence, concluding that the searches were not justified by exigent circumstances, probable cause, or consent and that a warrant was necessary for the second search. Here on appeal the State concedes that the defendant did not consent to the searches.

Officers Livingston and Scott of the Bloomington Police Department went to the American Trio store in Bloomington several minutes after 11 p.m., October 17, 1979, in response to a ringing burglar alarm. Each of the officers was driving his own car. Livingston saw a gold Cadillac in the parking lot of a NAPA store, two buildings away from American Trio; the trunk of the car was open. Livingston proceeded to NAPA to investigate; as he passed American Trio he heard an alarm ringing but noticed nothing unusual and did not see any cars parked there. By the time Livingston reached NAPA the Cadillac had already left, and he saw it traveling away from him on another street. Livingston stopped the Cadillac at the next intersection, and Officer Scott arrived soon after that. The defendant explained that he had stopped in the NAPA lot to urinate and pointed to a wet spot on one of the wheels of the car to confirm this; Officer Livingston testified at the hearing that he did not see any moisture on the wheel. Livingston asked Jones to open the trunk. According to Livingston, Jones silently complied. As Jones fiddled with the lock Livingston said that the trunk could be examined "later" if it would not come open then. Jones testified that he opened the trunk because Livingston told him that the police would open it themselves if he did not do it there. After seeing boltcutters in the trunk of the car Scott went to the American Trio store, where he saw that the padlock on the door of a storage trailer parked behind the store had been cut; the door was not open, however. Scott returned to the intersection where the defendant's car had been stopped, and the defendant and Young, the passenger in his car, were then arrested and taken to the Bloomington police station. The car was towed away.

The defendant argues that the State conceded at the suppression hearing that the police did not have probable cause to search the defendant's car. Although the State relied heavily on the defendant's supposed consent to the first search to support the admission of the evidence, we do not read the transcript as narrowly as the defendant does.

The trial court uttered a finding with regard to possible cause, and we do not construe it to be a gratuitous comment or part of a catalog of conceded and waived issues.

■■ The State argues that the police had probable cause to believe that the defendant had committed a crime and that the car contained contraband of some sort. A warrantless search of a vehicle may be justified when the same set of circumstances would not justify the warrantless search of a home. The Supreme Court has based this "automobile exception" to the warrant requirement (*Chambers v. Maroney* (1970), 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975; *Carroll v. United States* (1925), 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280) on two grounds: that vehicles by their nature are mobile and may be removed from the jurisdiction before police would be able to obtain a warrant and that the expectation of privacy in a vehicle is less than that in a home (*Arkansas v. Sanders* (1979), 442 U.S. 753, 761, 61 L. Ed. 2d 235, 243, 99 S. Ct. 2586, 2591). Thus, when police stop a car on a street they may search it if "they have probable cause to believe it contains contraband or evidence of a crime." (*Sanders*, 442 U.S. 753, 760, 61 L. Ed. 2d 235, 242, 99 S. Ct. 2586, 2591.) The court has cautioned, though, that

> "* * * the Carroll doctrine does not declare a field day for the police in searching automobiles. Automobile or no automobile, there must be probable cause for the search. As Mr. Justice White wrote for the Court in *Chambers v. Maroney*, [citation]: 'In enforcing the Fourth Amendment's prohibition against unreasonable searches and seizures, the Court has insisted upon probable cause as a minimum requirement for a reasonable search permitted by the Constitution.' " (*Almeida-Sanchez v. United States* (1973), 413 U.S. 266, 269-70, 37 L. Ed. 2d 596, 600-01, 93 S. Ct. 2535, 2537-38.)

And probable cause alone will not justify every warrantless search of a car. *Almeida-Sanchez*; *Chambers*.

When Officer Livingston stopped the Cadillac he knew only that the car had been parked several hundred feet from a ringing burglar alarm and that someone had run up to the open trunk. Livingston testified that the defendant speeded away from the NAPA lot and that no moisture appeared on any of the Cadillac's wheels. Livingston did not, however, ticket the defendant for speeding. The defendant testified that he was not speeding and explained that he had parked at NAPA to urinate. Officer Scott did not believe that at the time of the first search they had probable cause. *People v. Velleff* (1981), 94 Ill. App. 3d 820, 419 N.E.2d 89, found such a concession dispositive when made by the officer who had conducted the search. In this case Livingston searched the car and Scott was a backup. Given this evidence, the trial court's decision is clearly not

contrary to the manifest weight of the evidence. *People v. Williams* (1974), 57 Ill. 2d 239, 311 N.E.2d 681.

After Officer Scott returned from the American Trio Store the defendant and Young were arrested and taken to the police station. The car was towed from the scene and held at the towing company's storage yard, where Scott searched it by 2 a.m. the next day; he seized the boltcutters then. The State first argues that if the police had probable cause for the first search they had probable cause for the second. Law enforcement officers with probable cause to search a vehicle on the road may in certain circumstances delay the intrusion until the vehicle is in police custody. (*Colorado v. Bannister* (1980), 449 U.S. 1, 66 L. Ed. 2d 1, 101 S. Ct. 42 (*per curiam*); *Texas v. White* (1975), 423 U.S. 67, 46 L. Ed. 2d 209, 96 S. Ct. 304 (*per curiam*); *Chambers.*) The State would extend this rule to permit multiple searches: one when the car is stopped and others after the car is under police control. We need not decide this question, however, for we have decided that the first search was invalid. The second one must therefore find an independent justification.

■■ Impounding a vehicle temporarily ends its mobility and with that one of the two bases for the *Carroll* doctrine. Police may conduct inventory, but not investigatory, searches of impounded vehicles. (*South Dakota v. Opperman* (1976), 428 U.S. 364, 49 L. Ed. 2d 1000, 96 S. Ct. 3092; *Cady v. Dombrowski* (1973), 413 U.S. 433, 37 L. Ed. 2d 706, 93 S. Ct. 2523.) In this case neither Scott nor Livingston testified that inventory searches are a customary procedure in Bloomington or that an inventory search of the defendant's car was necessary (*cf. Opperman* (defendant's illegally parked car towed to impoundment lot where thieves had previously broken into two locked cars; officer noticed a watch on the dashboard and decided to inventory the contents of the car and remove valuables) and *Cady* (police knew that hospitalized driver of impounded car was a police officer and believed that his car therefore contained a gun)). The State also has not shown that the defendant's car had been forfeited as evidence. *Cf. Cooper v. California* (1967), 386 U.S. 58, 17 L. Ed. 2d 730, 87 S. Ct. 788 (car forfeited as evidence under State narcotics law).

We therefore grant the State's motion to file the certificate of impairment in this court and affirm the trial court's decision to suppress the evidence.

Affirmed.

GREEN, P. J., and MILLS, J., concur.