(No. 56761.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JOHN KANTOWSKI, Appellee.

*Opinion filed October 21, 1983.*

CLARK and SIMON, JJ., specially concurring.

Neil F. Hartigan and Tyrone C. Fahner, Attorneys General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Michael B. Weinstein, Assistant Attorney General, and Michael E. Shabat, Joan S. Cherry, Marie Quinlivan, Anthony John Calabreese, and Joel A. Stein, Assistant State's Attorneys, all of Chicago, of counsel), for the People.

Ackerman and Egan, Ltd., of Chicago (Allan A. Ackerman, of counsel, and Paul Karasik, law student), for appellee.

JUSTICE WARD delivered the opinion of the court:

The defendant, John Kantowski, was charged by an information in two counts with the unlawful use of weapons. Both counts were based upon his possession of a revolver. The circuit court of Cook County allowed the defendant's pretrial motion to suppress the introduction into evidence of the revolver, which was seized at the time he was ar-

rested. The appellate court, in a Rule 23 order (73 Ill. 2d R. 23), affirmed the order of suppression (104 Ill. App. 3d 1204), and we granted the State's petition for leave to appeal.

Officer John Efantis, a Chicago policeman for 12 years, was the only witness at the hearing on the motion to suppress. He testified that at about 9 a.m. on August 26, 1979, he observed the defendant drive his motorcycle at a high speed through a red traffic signal in Chicago. The stoplight was at an intersection the officer was approaching in his marked squad car. The speed of the motorcycle was so great that it left the ground at an incline at the intersection.

The officer turned on his siren and flashing lights and gave chase. When he began to overtake the defendant about four blocks later, the officer had reached a speed of approximately 75 miles per hour. The defendant ran another red light. He then made a right turn about two blocks beyond the signal and stopped. At some point during the chase, a police car driven by Officer Doherty joined in the chase.

The two officers approached the defendant, who remained sitting on his motorcycle, and asked to see his driver's license. The defendant unzipped his leather jacket, apparently to get the license, and when he did so, Officer Efantis saw a knife in the defendant's belt. The knife had a four-inch handle and a six-inch blade. The officer testified that at this point he feared for his safety. He was afraid that the defendant had another weapon. Officer Efantis took the knife from the defendant and ordered him to place his hands on the top of the car. Officer Doherty searched the defendant and found a revolver tucked in his belt near the small of his back. The precise extent of the search is not clear from the officer's testimony, but the defendant has not challenged the State's description of the search as a minimally intrusive search for weapons only.

As stated, the trial court suppressed the revolver which was the basis for the charges against the defendant. The court reasoned that the search was not incident to an arrest, because the officers had not yet placed the defendant under arrest at the time of the search. The State had argued that the search was, nevertheless, justified as a stop and frisk in view of Officer Efantis' fear for his safety. The court rejected that argument, though, because it judged that Officer Efantis had not specified any reasons for his fear for his personal safety.

Before we can reach the search and seizure question, we must consider a procedural objection. The defendant, citing *People v. Young* (1980), 82 Ill. 2d 234, contends that the appeal should be dismissed because the State did not file a certificate to the effect that the suppression of the evidence had substantially impaired its ability to prosecute. This question was not raised by the defendant in the appellate court. The State, in turn, has filed a motion for leave to supplement the record and to file such a certificate of impairment to prosecute.

In *Young*, this court analyzed Rule 604(a)(1) (73 Ill. 2d R. 604(a)(1)), which authorizes appeal by the State in criminal cases from an order or judgment suppressing evidence. The court recognized the necessity to permit the interlocutory review of suppression orders but observed, too, that those appeals should not be allowed where they would unnecessarily prolong the trial process. Balancing the interests of the prosecution, the defendant, and the public, this court held:

> "Rule 604(a)(1) allows an interlocutory appeal by the State of a pretrial suppression order whenever the prosecutor certifies to the trial court that the suppression substantially impairs the State's ability to prosecute the case. Our intention in requiring this certification is not to formulate a standard by which courts may determine the appealability of a particular order. As this court noted in [*People v. Van De Rostyne* (1976), 63 Ill. 2d 364], that

would indeed be a heavy burden, one which we do not believe justified by the marginal diminution in the number of appeals which we anticipate such a procedure would produce. Instead we rely solely upon the good-faith evaluation by the prosecutor of the impact of the suppression order on his case." (82 Ill. 2d 234, 247.)

This court patterned its rule on the requirement in the Criminal Appeals Act (18 U.S.C. sec. 3731 (1976)), that the United States may appeal a pretrial order suppressing evidence if the United States Attorney certifies to the district court that the appeal is not being taken for delay and the evidence suppressed would be a substantial proof of a material fact in the prosecution.

We allow the State's motion to supplement the record. The appellate court decisions relied upon, in which it was held that the filing of the certificate required by *Young* is not a jurisdictional requisite, are convincing. (*People v. Jones* (1981), 102 Ill. App. 3d 238; *People v. Keath* (1981), 101 Ill. App. 3d 652; *People v. Norris* (1981), 101 Ill. App. 3d 664.) In those cases, the court pointed to holdings that the certificate required under Rule 604(d) (73 Ill. 2d R. 604(d)), that is, a certificate to be filed in the trial court by a defendant's counsel upon a motion to withdraw a guilty plea to the effect that the lawyer has properly consulted with the defendant, may be filed in the reviewing court. (*E.g., People v. Hummel* (1977), 48 Ill. App. 3d 1002.) Too, it was observed that Federal courts have held that the certification under the Criminal Appeals Act referred to by this court in *Young* is not jurisdictional. (*E.g., United States v. Fleming* (8th Cir. 1977), 566 F.2d 623.) As was done in *People v. Jones* (1981), 102 Ill. App. 3d 238, the State is allowed to file the certificate as a supplement to the record.

The search of the defendant, the State asserts, was valid under *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, and *Pennsylvania v. Mimms* (1977), 434 U.S. 106, 54 L. Ed. 2d 331, 98 S. Ct. 330.

In *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, the Supreme Court announced what has come to be known as the "stop and frisk" rule. Under *Terry*, a police officer may investigate possible criminal behavior by stopping a person where the facts available to the officer, in light of his experience, would reasonably warrant him to believe that a stop was appropriate. In the course of the investigatory stop, the officer may, in the interest of his own protection, conduct a reasonable search for weapons where he has reason to believe that he is dealing with a person who is armed and dangerous. The officer need not be certain that the person is armed. It is sufficient if a reasonably prudent man under the circumstances would be warranted in believing that his safety or the safety of others was in danger. Because the justification for the search is the protection of the officer, the scope of the search must be limited to an intrusion that is designed to discover instruments endangering the officer, such as guns, knives or clubs.

The Supreme Court applied its holding in *Terry* in the context of a traffic stop in *Pennsylvania v. Mimms* (1977), 434 U.S. 106, 54 L. Ed. 2d 331, 98 S. Ct. 330. In *Mimms*, Philadelphia police officers stopped an automobile with the object of issuing a traffic summons to the driver because the vehicle had an expired license plate. One of the officers asked the driver to get out of the car and produce his owner's card and operator's license. As the driver did so, the officer noticed a large bulge under the driver's jacket. The officer, fearing that the bulge might be caused by a weapon, frisked the driver and found a revolver in his waistband.

The Supreme Court held that the revolver was properly received in evidence in a prosecution of the driver for carrying a concealed weapon. The stop of the automobile, the court explained, was justified by the traffic violation. It rejected the notion of the State supreme court that the offi-

cer had to suspect criminal activity in order to take the precautionary measure of "seizing" the driver by having him step from the car.

The Supreme Court held that once the driver had alighted from the car, and the officer had noticed the bulge, the search of the driver was proper under *Terry.* "The bulge in the jacket permitted the officer to conclude that [the driver] was armed and thus posed a serious and present danger to the safety of the officer. In these circumstances, any man of 'reasonable caution' would likely have conducted the 'pat down.' " 434 U.S. 106, 112, 54 L. Ed. 2d 331, 338, 98 S. Ct. 330, 334.

The State is correct in its contention that the search was proper under the authority of *Terry* and *Mimms.* It is not disputed that the stop was warranted, in view of the defendant's speeding through red traffic lights. After the high-speed chase, and after discovering that the defendant was armed with a large knife, the officers could reasonably have feared for their safety. Officer Efantis testified that he did fear for his safety.

To authorize a protective frisk, "[t]he officer need not show that it was more probable than not the detained person was armed. He need only show that there was a substantial possibility that the person possessed an instrumentality which could be used to commit bodily harm." (W. Ringle, Searches & Seizures, Arrests and Confessions sec. 13.6(a), at 13—42.2 (2d ed. 1983).) And in determining validity "courts should not set the test of sufficient suspicion that the individual is 'armed and presently dangerous' too high when the protection of the investigating officer is at stake." *United States v. Riggs* (2d Cir. 1973), 474 F.2d 699, 705, *cert. denied* (1973), 414 U.S. 820, 38 L. Ed. 2d 53, 94 S. Ct. 115.

The trial court's belief that the officer did not sufficiently specify the reasons for his fear for his personal safety was erroneous. Apparently, this conclusion of the

trial court was based upon its mistaken perception that Officer Efantis testified that he customarily searched all traffic offenders as he searched the defendant. That notion was repeated here by the defendant, who argued to us that the officer, in testifying candidly, admitted that he had searched the defendant not out of fear but "because he's used to searching." That, however, was not the officer's testimony. What he did testify was that normally in traffic stops he does not fear for his safety as long as he can watch the driver's hands. Here, though, the officer judged a search was in order for his protection after seeing the defendant's knife. The relevant part of his testimony was:

"A. This is normally what I do in traffic stops. If I can see the hands, I don't feel I'm in fear. I extend the courtesy of issuing the citation or whatever and let him go on his way. But under these circumstances I felt he should have been searched further.

Q. You felt?

A. We both.

Q. Did you discuss it with Officer Doherty?

A. Didn't have to discuss it. It's automatic.

Q. What is automatic, Officer?

A. We just--

MS. TURKINGTON: Objection, your Honor.

THE COURT: Overruled.

MR. WALSH: Q. What is automatic, sir?

A. That we would, you know, search a subject further if we felt that there was any kind of threat of another weapon or one weapon at all.

Q. So it's your automatic, I think was the word, as soon as you see a weapon or knife or whatever, you automatically assume that an individual had another weapon on him?

A. He could very well, yes.

Q. And automatically then you make--

A. I would make a complete search of the individual, yes."

It is clear, then, that the officer did not say that he automatically searched all traffic offenders. He searches traffic

offenders whom he believes or knows are armed. Here, it would have been profoundly foolish for the officer not to be concerned that a man carrying a 10-inch knife on a city street may have other weapons.

*People v. Navarro* (1982), 137 Cal. App. 3d 373, 187 Cal. Rptr. 70, on which the defendant relies, involved a factual situation different from the one here. There the court held that a stop and frisk of a passenger in an auto that had been stopped for a traffic violation was not warranted simply because the man wore military garb and carried a knife. The court judged that the search was invalid because, unlike here, the officers had no ground to detain or arrest the subject. The court said that the driver's violation did not provide a basis to detain or arrest the passenger.

A more pertinent decision than *Navarro* is *Michigan v. Long* (1983), 463 U.S. ____, 77 L. Ed. 2d 1201, 103 S. Ct. 3469, handed down after oral argument in this case. There police officers on night patrol in a rural area observed a car traveling erratically and at an excessive speed. They saw the car turn down a side road and swerve into a ditch. The officers stopped to investigate and were met at the rear of the auto by David Long, who was the only occupant of the car. The car was resting partly in the ditch and partly on the road. The door on the driver's side was open.

Long did not respond to the officers' first requests for his license and registration. One of the officers testified that the driver "appeared to be under the influence of something." At a second request for his registration, Long turned from the officers and began walking toward the open door, apparently to get the registration. The officers followed him and observed a large hunting knife on the floorboard of the driver's side. They then stopped Long and subjected him to a *Terry* pat-down, which disclosed no weapons. One of the officers inspected the interior of the vehicle for weapons and discovered a pouch containing marijuana. The defendant was then placed under arrest.

The Supreme Court held that the police had acted properly under *Terry*. The *Long* decision illustrates that the principles of *Terry* may authorize a search of the place in addition to the search of the person, and also that under *Terry* a search may be conducted after the discovery of a weapon. The latter point is relevant here. In that case and here, police were investigating a situation of a driver who was speeding and driving erratically. In each case, the driver was not searched until it was discovered that he possessed a knife. Too, it is important to note that the Supreme Court rejected the argument that there could not be a legitimate *Terry* search based upon the discovery of the hunting knife, because Long's possession of the knife was legal. (That argument was relied upon by the appellate court here.) The Supreme Court stated: "Assuming *arguendo* that Long possessed the knife lawfully, we have expressly rejected the view that the validity of a *Terry* search depends on whether the weapon is possessed in accordance with state law. See *Adams v. Williams* [(1972), 407 U.S. 143, 146, 32 L. Ed. 2d 612, 617, 92 S. Ct. 1921, 1923]." 463 U.S. ____, ____ n.16, 77 L. Ed. 2d 1201, 1222 n.16, 103 S. Ct. 3469, 3482 n.16.

For the reasons given, the judgments of the appellate and circuit courts are reversed. The cause is remanded to the circuit court of Cook County for further proceedings.

> *Judgments reversed;*
> *cause remanded.*

JUSTICE CLARK, specially concurring:

I agree with my colleagues that in this particular case, under the circumstances which presented themselves to this police officer, there was sufficient probable cause to perform a *Terry* pat-down search of the defendant. However, I think it is imperative that it be noted that all the circumstances surrounding the stop are what justified the search and not solely the defendant's legal possession of a knife with a six-inch blade. In *People v. McGowan* (1977),

69 Ill. 2d 73, this court held that it was reasonable for the police officer in that case to perform a limited weapons search, a patting down of the suspects. In that case, the police officer saw the defendants dressed in black, at 12:50 a.m., in a deserted commercial and industrial area which had been plagued by burglaries. There was only one establishment open in the area, and that was a tavern that was due to close at 1 a.m., 10 minutes after the defendants were spotted. This court held:

"Thus, while it is possible that the defendant and his companion were merely on their way to Penn's Tavern to have a fast drink before closing time, we agree that it was much more likely that persons dressed in black, walking in the dead of night through an otherwise deserted commercial and industrial area which had been plagued by burglaries, had just committed or were about to commit a burglary. Under these circumstances, the suspects easily might have eluded the officers had the officers attempted to observe the two suspects further rather than stopping them immediately. Hence, we agree that Officer Fulton's inference of an imminent or recent burglary was reasonable, and that stopping the defendant therefore was reasonable under the circumstances." (69 Ill. 73, 78-79.)

This court further held:

" 'Reasonable' in this context also means that the facts and circumstances must be specific and articulable. [Citation.] Viewed as a whole, they must lead to the conclusion that the situation confronting the police officer is so far removed from the ordinary that any competent police officer would be expected to act quickly to maintain the status quo, rather than to observe the situation further." (69 Ill. 2d 73, 78.)

In *McGowan*, we held that it was reasonable for the police officer to assume that if the defendant was an armed burglar he would not submit peacefully to questioning so that it was reasonable for the officer to perform a limited weapons search to protect himself and his partner. In the in-

stant case the fact that the defendant was driving his motorcycle at 75 miles an hour through red lights in an urban area while being chased by a police car with its siren sounding and lights flashing and then was found to possess a knife, I believe, gave rise to a sufficient degree of probable cause to do a pat-down search of the defendant for the officer's own safety.

If, however, this defendant had been driving his motorcycle at an excessive speed down a rural road near Golconda, Illinois, in early November during the annual Golconda Deer Festival, and had been stopped and found to possess such a knife, then I believe a finding of probable cause would be questionable. In areas where hunting or fishing is a popular sport, the carrying of a knife is the rule rather than the exception. Hunters and fishermen must carry knives in order to clean and dress the game they harvest. In some instances, unless the game is cleaned shortly after being killed, it may spoil. If one were to visit a town such as Golconda and patronize the local diner during the annual deer festival, one would find that the carrying of a knife would be a commonplace occurrence.

Insofar as the majority opinion could be construed to hold that solely because the defendant possessed a legally carried knife there was sufficient probable cause to conduct a *Terry* search, I disagree.

I believe that it depends on the particular circumstances of a case whether the defendant can be legally searched without a warrant. The majority relies on *Michigan v. Long* (1983), 463 U.S. ____, 77 L. Ed. 2d 1201, 103 S. Ct. 3469, to bolster its position that there was probable cause to search the defendant in the instant case. In that case, although the stop and search took place in a rural area, the defendant had driven his car into a ditch and appeared to be "under the influence of something." He also failed to respond to the police officer's first requests for his license and registration. The search was conducted at nighttime,

so we can assume it was dark. Besides the fact that most hunting and fishing is done during the daylight hours, it is more difficult to see and watch a person in the dark. But more importantly, the defendant was acting abnormally and in an uncooperative fashion, facts which could lead a police officer to believe he might be in danger of his life or bodily harm. I agree that under those circumstances there was sufficient probable cause to conduct a search.

In any event, each case presents a distinct set of circumstances under which probable cause must be established.

I concur in the result the majority reached in this case but disagree insofar as this case could be interpreted to justify a pat-down search anytime a person is found to legally possess a knife.

JUSTICE SIMON joins in this special concurrence.