THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* SAMUEL MEEK, Defendant-Appellee.

Fourth District    No. 16343

Opinion filed January 29, 1981.

Thomas J. Fahey, State's Attorney, of Danville (Gary J. Anderson and David E. Mannchen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Daniel D. Yuhas and James G. Woodward, both of State Appellate Defender's Office, of Springfield, for appellee.

Mr. JUSTICE MILLS delivered the opinion of the court:

Can the State move to dismiss a criminal charge *with prejudice*, see the motion allowed, and then appeal from the dismissal?

Of course not.

Appeal dismissed.

In essence, this is what happened:

Meek was charged with two counts, one of burglary and one of theft over $150. On April 14, 1980, the prosecutor's request for a continuance due to the unavailability of a State witness was denied, at which point the trial court granted the State's motion to dismiss the indictment with prejudice.

But the singular factual situation presented to us justifies a rather detailed recitation of the events leading to the State's attempt here to appeal.

On January 28, 1980, an indictment was filed charging the defendant with one count of burglary and one count of theft over $150. On the following day, the defendant pleaded not guilty and trial was set for April 9, 1980.

On April 8, 1980, Assistant State's Attorney David Ryan filed a motion for a continuance. In his affidavit in support of this motion, Ryan stated that Dale Dixon, a part-time police chief with the Belgium, Illinois, police department, had left the State on April 7, 1980, on a truck-driving trip to the State of Pennsylvania and would be out of Illinois and unavailable to testify until April 12, 1980. Ryan stated that Dixon was a witness necessary for the presentation of the State's case. The trial court granted the State's motion and set the case for bench trial on April 14, 1980.

On April 14, 1980, Ryan presented an oral motion to be allowed to split up the State's case by presenting the testimony of Dale Dixon at a later date. In support of this motion, Ryan stated that Dixon had not been in town all weekend and had not contacted the State's Attorney's Office with regard to this case and was avoiding service of the subpoena. Ryan stated that Investigator Herb Randall of the State's Attorney's Office had contacted Dixon's wife the previous Tuesday. Mrs. Dixon told Randall that her husband would be in Texas but would return on Saturday, when

he would be working for the Belgium Police Department. Randall told Mrs. Dixon to have her husband call the State's Attorney's Office.

Deputy Jerry Davis spoke with Dixon's superior, Chief Chew of the Sidell Police Department. Deputy Davis told Ryan that, on the basis of his conversation with Chew, Davis believed that Dixon was scheduled to work for the city of Belgium as a police officer that weekend. Deputy Davis went past his house several times to try to serve the subpoena on the weekend of April 12, 1980. Dixon was not at home. Mrs. Dixon told Davis that her husband had not returned from Texas that weekend but had stayed there for another truck-driving trip and would not be returning to Illinois until "the middle of this week." Finally, Ryan stated that Deputy Davis had told all three shifts of the Vermilion County Sheriff's Department about the subpoena and its importance and had asked them to check Dixon's house at all hours of the day that weekend. Davis was unable, however, to serve the subpoena.

Ryan stated that he believed that Dixon was deliberately avoiding the subpoena because of the hostility and ill will between Dixon and the State's Attorney's Office. Ryan believed that Dixon bore him a grudge from an incident two years earlier in which Ryan had filed charges against Dixon for obstructing an investigation. The charges were dropped when a witness later recanted the statement he had given to the police. Finally, Ryan stated that all of the other State's witnesses were present and ready for the trial. Defense counsel James Yoho objected to this motion but noted it would not be worthwhile to start the case without the testimony of Dale Dixon, whose testimony would be one of the central areas in dispute. Yoho stated that Dixon's bad faith in terms of being available as a witness after having brought the charges as a police officer should be imputed against the State for purposes of a motion for continuance, especially since a continuance had previously been granted solely on the basis of Dixon's absence.

The trial court found that since the case had been set for at least a month and since the State had an opportunity to serve the subpoena much earlier than the continuance granted the previous week, failure to serve a subpoena upon the witness for the State must fall upon the State. The trial court held that if the witness was not available by noon the following day, April 15, no further continuance would be granted for the purposes of obtaining that witness.

On April 15, 1980, Ryan stated that pursuant to the court's order of April 14, a police officer had been sent to Dale Dixon's house. Dixon's truck was not at home, and Mrs. Dixon stated that he was still in Texas and had not been home all weekend. Ryan stated that he had talked to Officer Bruce Stark of the Danville Police Department, who had seen

Dixon driving his unmarked Belgium squad car down Route 1 on Saturday, in direct contradiction to Mrs. Dixon's statement that her husband was in Texas. Ryan moved, on the basis of this additional information, that a continuance be granted for one week so that they could subpoena Dixon.

Yoho, defense counsel, objected to this motion. The court held that its ruling of April 14 would remain in effect since the lack of diligence in seeking to subpoena Dixon had occurred at some time in the past and since there was no showing that Dixon would not be successful in continuing to avoid service of the subpoena.

The following scene then unfolded with Mr. Ryan for the State and Mr. Yoho for the defendant:

"MR. RYAN: The people will move to dismiss at this time then as to Mr. Meek only, not as to Mr. Keith. Only Mr. Meek was set for trial today.

MR. YOHO: We have no objection.

THE COURT: All right. Show motion by the people to dismiss the cause of action as to Samuel Meek is granted.

MR. YOHO: In the Court's mind, with prejudice?

THE COURT: What kind of a bond does he have up?

MR. RYAN: He's on a parole hold, Your Honor. I don't think there was a bond set.

MR. YOHO: I think the record should show that we were here prepared for trial and that dismissal, at least in the Court's mind, is with prejudice on the merits of the cause.

MR. RYAN: We would object to the with prejudice dismissal. We don't believe jeopardy has attached. No witnesses have been called.

MR. YOHO: Well, Your Honor, we're here ready for trial and the state has moved for a continuance. The continuance has been conditionally granted but in the most part denied. We're here ready for trial. I think one continuance has been granted for the very grounds indicated. The Court has indicated its feelings that the state was not or has not shown diligence in terms of obtaining the witness. I say either we dismiss with prejudice now or we go to trial today on the merits. We're here today prepared to try on the merits.

THE COURT: Yes. In light of the Court's ruling on the motion for continuance, I think that's a reasonable position for the defendant to take. So unless the state is willing to dismiss this case with prejudice as to Mr. Meek, the Court feels that the state should go ahead and present its case.

MR. RYAN: Your Honor, we would just move to dismiss and any

characterization the Court chose to attach to our motion or any dismissal, whether it was with prejudice or not, we would move to dismiss without prejudice. If the Court rules to make this with prejudice, we would object, but we would have nothing else to say.

MR. YOHO: Well, Your Honor, our response to Mr. Ryan's indication that he would object to any characterization of the motion to dismiss with prejudice, whether or not that was the Court's idea or Mr. Ryan's, is that we have no objection to the motion to dismiss only if it is with prejudice and jeopardy attaches for the reason that this case has been called for trial for the second time and we are here prepared now to proceed to trial. I would suggest that if the Court is not prepared to attach prejudice, then that we would ask the Court to hold the state to trial at this time and Mr. Ryan can call those witnesses he chooses to call and we'll proceed according to the book.

MR. RYAN: We would maintain our motion. We would ask for a ruling on our motion to dismiss, Your Honor.

THE COURT: All right. Then in light of the objection on the part of the defendant, the motion to dismiss without prejudice will be denied. Case will be called for trial.

MR. RYAN: We'll move to dismiss with prejudice based only upon the fact that our motion to dismiss without prejudice is denied and based on the fact that a necessary witness is not present and we'll be forced to dismiss with prejudice since it's our position that were we to call witnesses, jeopardy would attach and we cannot complete our trial without a necessary witness. So based on the fact that our motion to dismiss without prejudice is denied and based on the fact that the Court will not dismiss the case with leave to reinstate and we're attempting to avoid jeopardy attaching, we will move to dismiss with prejudice.

THE COURT: Do you have any objection?

MR. YOHO: No, Your Honor.

THE COURT: All right. Show motion by the people to dismiss the case as to Samuel E. Meek with prejudice is granted. Case is ordered dismissed."

The State now appeals claiming that the trial court abused its discretion in denying its motion for a continuance and that the trial court was without authority to dismiss the indictment with prejudice. Besides contesting these positions, the defendant has also questioned the authority for the State's appeal. After an examination of the record and various authorities, we conclude that the State was without authority to appeal the trial court's order. *Ergo*, we dismiss the appeal.

Supreme Court Rule 604(a)(1) defines the instances when the State may appeal a decision of the trial court. That rule states:

> "When State May Appeal. In criminal cases the State may appeal only from an order or judgment the substantive effect of which results in dismissing a charge for any of the grounds enumerated in section 114—1 of the Code of Criminal Procedure of 1963; arresting judgment because of a defective indictment, information or complaint; quashing an arrest or search warrant; or suppressing evidence." 73 Ill. 2d R. 604(a)(1).

The extent of the State's ability to take an appeal in criminal cases has expanded dramatically in the last 50 years. (*People v. Young* (1980), 82 Ill. 2d 234, 412 N.E.2d 501.) In *Young*, our supreme court recently held that Rule 604(a)(1) allows an interlocutory appeal by the State of a pretrial suppression order whenever the prosecutor certifies to the trial court that the suppression substantially impairs the State's ability to prosecute the case. In *People v. Flatt* (1980), 82 Ill. 2d 250, 412 N.E.2d 509, decided on the same day as *Young*, the court held that the State could appeal an order of suppression entered after a trial has begun if such order substantially impairs the State's ability to prosecute the case. See also *People v. Phipps* (1980), 83 Ill. 2d 87, 413 N.E.2d 1277.

Although the State's right to appeal has been expanded, we are unaware of any case declaring a right to appeal under facts similar to those presented here. The discussion leading to the dismissal of the indictment has been quoted at length above. Of particular importance is the fact that the trial judge, who was a party to the discussion, dismissed on *motion of the State.* Indeed, it was the State that initially suggested dismissal, and in the absence of the State's motion for a dismissal *with prejudice*, the cause would have proceeded to trial. The State now asserts that as a practical matter the motion to dismiss with prejudice was the defendant's. We disagree. Although the defendant suggested that the dismissal be with prejudice, the record reflects that the trial judge was not going to grant the defendant's request and in fact called the case for trial.

Thus, the narrow question which we must consider is whether the State can appeal a dismissal with prejudice granted pursuant to its own motion. The State has cited us no authority declaring this order appealable.

But defendant cites the decision in *People v. Maher* (1979), 77 Ill. App. 3d 488, 396 N.E.2d 77. In *Maher*, the Assistant State's Attorney moved for a continuance where the defendant was charged with driving while his license was suspended or revoked, because the State had not obtained necessary records from the Secretary of State's office. When this motion was denied, the State moved to dismiss the charges, such motion

being granted without objection by the defendant. The State subsequently refiled the charges, and they were dismissed on the basis of double jeopardy. Defendant moved to dismiss the appeal, arguing that the State was required to file its notice of appeal within 30 days of the first dismissal. In rejecting this contention, the Second District found that the first dismissal was in substance a *nolle prosequi* of the charges. "The court's order of dismissal simply formalized the *nol pros*, and it could not be appealed by the State because it was not an adverse order as contemplated by Supreme Court Rule 604 (Ill. Rev. Stat. 1977, ch. 110A, par. 604)." 77 Ill. App. 3d 488, 490, 396 N.E.2d 77, 79.

■■■ The *Maher* decision also noted, however, that if a motion to dismiss on the merits made *by the defendant* had been granted, the State could appeal. But, as we have noted above, the motion here was made by the State. We do not perceive the dismissal here to have been adverse to the State, and thus the order is not appealable under Supreme Court Rule 604.

In the trial court it was fairly clear that the Assistant State's Attorney made his motion because of his double jeopardy concerns. Indeed, the opportunity of the State to appeal the denial of the continuance may be limited since the State may not appeal a judgment of acquittal. This concern must, however, be balanced against the discretion given to the trial court to grant or deny continuances. The trial court's power is emasculated if the State is allowed to appeal the denial of the continuance.

In any event, we do not here address the double jeopardy concerns expressed by the prosecutor, nor do we speculate as to what would have happened if the State had proceeded to trial. (See *People v. Deems* (1980), 81 Ill. 2d 384, 410 N.E.2d 8.) In like manner, we do not address the questions of whether the trial court properly exercised its discretion or whether the court had the authority to enter this order. Since there is no authority for a State appeal in this case, neither question is properly before us.

Appeal dismissed.

CRAVEN and WEBBER, JJ., concur.