JUSTICE BARRY delivered the opinion of the court: Defendants, Constance Jones, Diane (Cerami) Lanken, Jonathan Cray and James Knobloch, appeal from their convictions of conspiracy to commit gambling and defendants Jones and Lanken also appeal from their convictions of syndicated gambling following a jury trial in the circuit court of Peoria County. The court sentenced all of the defendants to conditional discharge for a period of 18 months plus fines of $3,000 and court costs each for Jones and Lanken and $2,500 and court costs each for Cray and Knobloch. The defendants raise 10 issues for our review, only one of which we need address— whether the trial court erred in denying the defendants’ motion for discharge for violation of their right to a speedy trial. The incidents giving rise to the convictions being challenged in this appeal transpired on April 22 and April 29, 1981. On both dates, undercover officers of the Peoria police department attended meetings at the Continental Regency Hotel in Peoria where an “investment program” called New Concepts was presented. The meetings were conducted primarily by Donald Sanders, a codefendant who is not a party to this appeal, with reference to a chart or charts which described how the “members” of New Concepts could qualify for as much as $35,000 on a $675 investment. Each new member, accepted into the program on affidavit that his/her combined income and net worth were in excess of $100,000, was required to tender $675 in cash to the individuals managing the program, $50 of which was nonrefundable and used for administrative expenses and $625 of which would be returned to the member as he/ she progressed to the position of “chart manager.” At a later stage of similar progressions, the member would potentially qualify for $17,000 or $35,000, depending on whether or not he had brought at least two additional “investors” into the program. The scheme of progressions was described by a series of charts in pyramid diagrams with a “chart managér” at the top and supported by successive layers of positions for two, four and eight names. At a point where all existing charts had all eight names filling the bottom, entry level positions, the existing charts would “split,” each forming two new charts with the base level names elevated to the next level containing four names. These new charts, in turn, would split when all eight names were entered on their bottom levels. In this manner, the names at the four-name level would progress upward to the two-name level. A third split in the same manner would cause the names at the two-name level to rise to the “chart manager” position and, thus, qualify for the return of their $625 investments. This same four-level process was then to be repeated on a second series of charts as more members joined in the scheme. However, in the latter series the eight-name entry level consisted of “chart managers” and culminated in attainment of the “collector’s box” position at the top wherein $35,000 would be distributed. Mr. Sanders explained that the New Concept scheme was unlike the illegal “pyramid” or “chain letter” games in that the number of charts in existence would be limited to 100 or 150 by introducing a qualifying not-for-profit organization, consisting of 1,000 or more members, into the scheme. Thereafter, the individuals who joined would contribute $625 with no possibility of recouping their investments; and they could, according to Sanders’ explanation, declare the amount as a charitable contribution on their income tax returns. The “charitable contributions” would continue until such time as the not-for-profit organization attained the “collector’s box” and received its $35,000. Then, the supporting charts would be terminated. On April 29, after observing several of the guests at the meeting pay their money to join the program the undercover officers triggered an electronic device to alert an awaiting “SWAT” team that it was time to storm the meeting, weapons displayed, and arrest those in charge. In addition to the four defendants in this appeal, the police arrested Don Sanders, Lois Sanders and Helen Cray. On May 12, 1981, the seven defendants were indicted in five counts — gambling (two counts), theft, conspiracy and syndicated gambling. The defendants filed pretrial motions and demanded a speedy trial on May 21. At the pretrial hearing on July 24, the court dismissed the indictment against Helen Cray and ordered suppression of some of the evidence which was seized on the basis of invalid consents and search warrants. Counsel for the prosecution volunteered to prepare a written order. The State filed a timely notice of appeal on August 13. Subsequently, on November 6, a written order of the trial court’s July 24 rulings was prepared by the State’s Attorney’s office, submitted to the trial court and entered nunc pro tunc on the State’s motion. This was followed by a second notice of appeal by the State dated November 9, 1981. The State’s appeal to this court was never perfected. On January 20, 1982, we granted a motion by defendants to dismiss the State’s appeals. Various mesne motions were filed in the trial court subsequent to the return of this court’s mandate, including defendants’ motions for discharge. On August 30, 1982, the trial court denied the motions for discharge, and defendants’ trial began. Following a four-day trial, the jury returned verdicts finding the four defendants herein guilty of conspiracy to commit gambling; in addition, Jones and Lanken were found guilty of syndicated gambling and two counts of gambling. The defendants were found not guilty of the remaining charges. They were convicted as aforesaid. The prefatory question that the foregoing chronology presents is whether the State’s initial notice of appeal tolled the 160-day statutory period for bringing the defendants to trial. (Ill. Rev. Stat. 1981, ch. 38, par. 103 — 5(b).) The ultimate question, of course, is whether the defendants’ statutory or constitutional rights to a speedy trial were violated. The following chart serves to demonstrate the relevant pretrial matters which figure into our consideration and resolution of the speedy trial issue: Defendants arrested and jailed April 29,1981 Defendant Jones released on bond April 30,1981 Defendant Lanken released on bond May 1,1981 Defendant Cray released on bond May 2,1981 Defendant Knobloch released on bond May 3,1981 Defendants indicted May 12,1981 Defendants demand speedy trial May 21,1981 Trial date set for August 31,1981 July 9,1981 Motions for discharge and suppression of evidence heard and rulings entered orally July 24, 1981 State files notice of appeal August 13,1981 State submits written order for trial court’s entry nunc pro tune November 6,1981 State files second notice of appeal from written order November 9, 1981 Appellate court enters rule to show cause why State’s first appeal should not be dismissed December 4, 1981 State moves to consolidate August and November appeals December 8,1981 Defendants move to dismiss the State’s appeals December 22,1981 Rule to show cause vacated; State appeals dismissed January 20,1982 Mandates issued by appellate court February 10,1982 February 16,1982 Mandates received by circuit court May 21, 1982 Defendants file motion for discharge August 30,1982 Motion for discharge denied and trial commenced. A total of 465 days elapsed between May 21, 1981, and the defendants’ trial on August 30,1982. Obviously if the filing of the State’s first notice of appeal did not toll the statutory period (160 days) allowed for bringing the defendants to trial, then the 181 days elapsing between August 13 when the notice was filed, and February 10, 1982, when this court’s mandate was issued, were sufficient to entitle the defendants to a discharge under the speedy-trial statute, and we need not apportion the remaining 284 days in issue. (Of the 284 days, the State concedes that 99 were not attributable to the defendants.) Our consideration of the speedy-trial issue, of course, requires us to apply these facts within the confines of relevant statutes, Supreme Court Rules and case law. The speedy trial statute (Ill. Rev. Stat. 1981, ch. 38, pars. 103 — 5(b), (d)), in pertinent part, states: “Every person on bail or recognizance shall be tried *** within 160 days from the date defendant demands trial unless delay is occasioned by the defendant *** or by an interlocutory appeal. *** Every person not tried in accordance with [subsection] *** (b) *** of this Section shall be discharged from *** the obligations of his bail or recognizance.” Supreme Court Rule 604(aXl) and (4) recites: “In criminal cases the State may appeal only from an order or judgment the substantive effect of which results in *** arresting judgment because of a defective indictment ***; quashing an arrest or search warrant; or suppressing evidence. * * * The time during which an appeal by the State is pending is not counted for the purpose of determining whether an accused is entitled to discharge under section 103 — 5 of the Code of Criminal Procedure of 1963.” 87 Ill. 2d R. 604(a)(1), (4). Finally, the parties have pointed out that People v. Young (1980), 82 Ill. 2d 234, 247, 412 N.E.2d 501, 507, imposes a requirement that to appeal pretrial suppression orders under Rule 604(aXl), the State must certify “to the trial court that the suppression substantially impairs the State’s ability to prosecute the case.” The State’s August 13, 1981, notice of appeal recited that its appeal was from “an Order suppressing evidence and the dismissal of the Indictment as to Helen Cray.” The prosecution did not, either before filing its August 13 notice of appeal or at any later time, file a “certificate of impairment” as required by Rule 604(a)(1). (Young.) This court’s docketing order of September 2, 1981, scheduled the due dates for filing documents as follows: October 1 — report of proceedings due in the trial court; October 15 — report of proceedings due in the reviewing court; November 19 — appellant’s brief due. According to our records, the State filed a certificate in lieu of record on October 15 and filed the report of proceedings on November 10. The defendants, meanwhile, on November 9 filed a motion to dismiss the State’s appeal on grounds that the prosecution failed to file the Young certification and that, in fact, the prosecution had been attributed in a newspaper report dated July 25, 1981, with having stated that “the County could prosecute the case without the suppressed evidence.” The State did not respond to the latter allegation. The State’s Attorneys’ Appellate Service Commission entered its appearance on November 13. On November 18, 1981, we denied the defendants’ motion to dismiss. However, when the State, in addition to having ignored the Young certification requirement, also failed to file its brief according to schedule, this court, on its own motion, on December 4 entered a rule to show cause by December 18 why the appeal should not be dismissed. The State’s Attorneys’ Appellate Service Commission responded on December 8 with a motion to consolidate its November 9 “second appeal” with the August 13 appeal and to adopt the briefing schedule for the “latter appeal.” The defendants vigorously opposed the motion to consolidate. The defendants argued that the State’s “second appeal” was invalid on its face because it had not been filed within 30 days of the trial court’s pretrial order. The defendants further moved to dismiss the State’s appeal on grounds that the State had failed to comply with the original briefing schedule and had never asked for an extension of time. The defendants also incorporated by reference their earlier arguments on the Young certification issue. The State replied to the motion, generally denying any bad-faith motives in their dilatory appellate proceedings and requesting, once again, that we consolidate the two appeals and adopt the later briefing schedule. Ultimately, on January 20, 1982, this court denied the State’s motion to consolidate and granted the defendants’ motion to dismiss “both” appeals. The State’s motives for pursuing the foregoing course of action are a matter of speculation, at best. Certainly it has not been conclusively demonstrated that the State’s August 13 notice of appeal was filed solely to take advantage of the automatic delay afforded by the speedy trial statute and Rule 604(a)(4). On the other hand, it is undeniable that the defendants’ trial was delayed 181 days as a direct result of the State’s August 13, 1981, notice of appeal. In People v. Meyers (1982), 109 Ill. App. 3d 862, 441 N.E.2d 397, we made clear our position on the State’s use of tactics to avoid or emasculate the Young certification requirement. There, unlike here, the prosecution filed a certification in this court several months after its notice of appeal. The issue in Meyers was whether the State’s belated filing of Young certification was a sufficient departure from the rules respecting State appeals to entitle the defendant to a dismissal of the interlocutory State appeal. We concluded, with some reluctance, that the procedural defect in Meyers had not been shown to have prejudiced the defendant, and we denied his motion to dismiss. The issue before us today carries us well beyond the procedural flaw of Meyers. The defendants here claim prejudice because, through no fault of the defendants, the State’s aborted appeal resulted in a 181-day delay in their trial in the face of a speedy trial demand. In Young the Illinois Supreme Court acknowledged that the State’s limited right of interlocutory appeals under Rule 604 represents a balancing among legitimate interests of the judiciary, society as a whole, and individual defendants. The court there observed: “[I]t is obvious that an innocent defendant in a criminal case has a strong interest in the swift resolution of his case. Even the guilty defendant may well have an interest in avoiding the expense and hardship of an unnecessarily prolonged trial. This interest is reflected to some extent in the speedy trial statute (Ill. Rev. Stat. 1977, ch. 38, par. 103 — 5), although that statute does toll the 120-day limit during the pendency of an interlocutory appeal. The hardship attendant to an interlocutory appeal is diminished to some extent by subsection (a)(3) of Rule 604 (73 Ill. 2d R. 604(a)(3)), which provides that a defendant shall not be held in jail or to bail during such an appeal in the absence of a compelling reason to do so. Too, the defendant’s interests are not affected to the same extent by the appeal of a pretrial order as they are by an appeal which interrupts an ongoing trial. In the former situation the defendant is not subject to the additional strain and expense inherent in recommencing a case after the appeal has been determined. Finally, the defendant’s most vital interests are protected by the double jeopardy clauses.” People v. Young (1980), 82 Ill. 2d 234, 243-44, 412 N.E.2d 501, 505-06. The Young court next addressed the interests of the judiciary and society as a whole in permitting State appeals in certain cases: “[Allowing interlocutory appeals may actually enhance the functioning of the judicial system. In the absence of interlocutory appeals, the proscriptions of the double jeopardy clauses would preclude reviewing courts from considering legal issues that would otherwise be raised by the State. Errors favoring defendants would pass uncorrected, while those which favored the State would be rectified. To the extent that such errors remained unreviewed and proliferated at the trial court level, the development of the law would be distorted. *** *** More importantly and more frequently, however, erroneous exclusionary rulings frustrate the primary purpose of the trial: to ascertain the truth of the charges. Social policies embodied in statutory or constitutional provisions may justify encumbering the fact-ascertaining process, but the exclusion of otherwise probative and admissible evidence based solely upon an incorrect interpretation of those provisions serves neither the policy represented by the provision nor the public’s interest in an accurate resolution of the factual questions involved in the litigation. Permitting such decisions to escape review encourages their proliferation and denies trial courts desirable guidance. Allowing interlocutory review ensures proper application of the governing rules and at the same time protects the ability of the trial court to determine the truth of the factual allegations involved.” 82 Ill. 2d 234, 244-46, 412 N.E.2d 501, 506-07. Where, as in the present case, the State fails to perfect its appeal and fails to provide any reasonable justification for having advanced it in the first place, then none of the foregoing judicial and societal interests can be shown to have been served. The defendants’ interests in a speedy trial obviously would outweigh any legitimate State interests and should entitle them to a discharge under the speedy trial statute. The State resists this conclusion by pointing out the express statutory exception for State appeals in section 103 — 5 which, the State argues, overrides countervailing public policy. We are not persuaded by the State’s argument. We do not believe that the mere filing of a notice of appeal, •without more, constitutes an “interlocutory appeal,” as that expression is used in the speedy trial statute and incorporated into Rule 604(a)(4) by reference. We are not impressed by the State’s argument that the pendency of its ill-founded motion to consolidate appeals justified its failure to comply with the docketing schedule set on the basis of its August 12 notice of appeal. We have heretofore ruled as a matter of policy that a mere filing of a motion will not delay the obligation to timely fulfill docketing requirements. Furthermore, the State’s contention that it relied on People v. Hoffner (1981), 99 Ill. App. 3d 516, 425 N.E.2d 603 (overruled in part by People v. Meyers) in deciding that the Young certification was not required is equally unconvincing. Hoffner was decided on August 31, 1981, two weeks after the State’s notice of appeal was filed sans certification here and Hoffner gave no authority to disregard the obligation to comply with docketing requirements. We note as well that the State has never responded to defendants’ “evidence” that the State’s appeal must have been frivolous in light of the prosecutor’s purported statement to the press. The State relies solely on the statutory tolling provision for its position that the defendants were not entitled to a discharge on grounds of a speedy-trial violation. To construe an interlocutory appeal as a tolling event merely upon the State’s filing of a notice of appeal, without more, could directly affect a valuable right. The right to a speedy trial may be of either statutory or constitutional dimension. Section 103 — 5 of the Code of Criminal Procedure of 1963 implements the constitutional right to a speedy trial. (People v. Richards (1980), 81 Ill. 2d 454, 410 N.E.2d 833.) Although the tests differ for determining whether a violation has occurred, the essential difference between the statutory and constitutional guarantees is only in degree. The evils sought to be remedied by the speedy trial clauses of the Federal (U.S. Const., amend. VI) and State (Ill. Const. 1970, art. I, sec. 8) constitutions are coextensive with those underpinning the statutory guarantee. In United States v. MacDonald (1982), 456 U.S. 1, 9, 71 L. Ed. 2d 696, 704, 102 S. Ct. 1497, 1502, the Supreme Court discussed the purposes of the speedy-trial guarantee: “The speedy trial guarantee is designed to minimize the possibibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.” “ ‘Inordinate delay between arrest, indictment, and trial may impair a defendant’s ability to present an effective defense. But the major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused’s defense. To legally arrest and detain, the Government must assert probable cause to believe the arrestee has committed a crime. Arrest is a public act that may seriously interfere with the defendant’s liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.’ ” 456 U.S. 1, 8-9, 71 L. Ed. 2d 696, 703, 102 S. Ct. 1497, 1502, quoting United States v. Marion (1971), 404 U.S. 307, 320, 30 L. Ed. 2d 468, 478, 92 S. Ct. 455, 463. The purpose of the statutory right to a speedy trial would be defeated were the State permitted to file a notice of interlocutory appeal, enjoy the delay afforded by procedural maneuvering in the reviewing court, “suffer” dismissal of the appeal for failure to prosecute, and then proceed with its prosecution in the trial court without regard to the defendant’s loss of liberty or other legitimate concerns during the pendency of such an appeal. Clearly this result was not contemplated by the legislature when it enacted the statutory exception for interlocutory appeals. Indeed, were we to consider the State’s dismissed appeal in this case as an event which tolled the statutory 160-day period and thereby grant the State liberty to proceed, while ignoring the defendants’ legitimate interests in a speedy trial, we would not only be misconstruing the legislative purpose of the exception for interlocutory appeals as provided for in section 103 — 5, but we would risk subscribing to an impermissible erosion of the defendants’ constitutional guarantee as well. We hold, therefore, that the State’s failure to perfect an appeal in this case, without a showing a justification, rendered its August 13 appeal a nullity. Accordingly, we hold that the statutory 160-day period for bringing the defendants to trial was not tolled between August 13, 1981, when the State filed its notice of appeal, and January 20, 1982, when that appeal was dismissed. The defendants’ statutory right to be brought to trial within 160 days of their speedy-trial demand was determined, at the latest, on January 20, 1982, which just happens to coincide with the date the State’s appeals were dismissed. In addition to the foregoing 160 days, the State concedes that 99 days of the_ period between January 20 and the defendants’ trial on August 30, 1982, are not chargeable to the defendants. Since the defendants’ statutory right to a speedy trial was violated by excessive delay not chargeable to them, they are entitled to a discharge. For the foregoing reasons the defendants’ judgments of convictions are reversed and the cause is remanded to the trial court. The trial court is directed to vacate convictions and sentences and discharge the defendants. Reversed and remanded with directions. ALLOY and HE IRLE, JJ., concur.