# Illinois Official Reports

## Appellate Court

---

### *People v. Stevenson*, 2014 IL App (4th) 130313

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MARTIN STEVENSON, Defendant-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-13-0313 |
| Filed<br>Rehearing denied | June 11, 2014<br>July 15, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a prosecution for endangering the life of a child arising from allegations that defendant's actions placed her in proximity to or permitted access to Suboxone, a drug he was using to treat his opiate addiction, and led to her death, the trial court's ruling allowing defendant's motions *in limine* without limitation to exclude evidence of his substance-abuse history, treatment, prior use of Suboxone and the prescription used to obtain the drug at the time of her death was reversed and the cause was remanded with directions to reconsider the motions after requiring amendments to more specifically identify the evidence sought to be excluded and to enter an order accurately explaining its limitations, or decline to entertain the motions until they are ripe for reconsideration. |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 12-CF-779; the Hon. Scott Drazewski, Judge, presiding. |
| Judgment | Reversed and remanded for further proceedings. |

Counsel on
Appeal

Jason Chambers, State's Attorney, of Bloomington (Patrick Delfino, David J. Robinson, and Linda Susan McClain (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Michael J. Pelletier, Jacqueline L. Bullard, Amber Corrigan, and Nancy Vincent (argued), all of State Appellate Defender's Office, of Springfield, for appellee.

Panel

JUSTICE KNECHT delivered the judgment of the court, with opinion.
Presiding Justice Appleton and Justice Steigmann concurred in the judgment and opinion.


**OPINION**

¶ 1        In August 2012, a McLean County grand jury indicted defendant, Martin J. Stevenson, for endangering the life of a child (720 ILCS 5/12-21.6(a) (West 2010)). In February 2013, defendant filed two motions *in limine*. The first motion *in limine* requested the trial court to prohibit the State from introducing evidence (1) about his "history of prior substance abuse," (2) defendant sought treatment for his substance abuse, (3) he had previously been prescribed Suboxone "on more than one occasion," (4) he was prescribed Suboxone on the day before the child died, and (5) the Suboxone prescription was a result of his "relapse." Defendant asserted the probative value of this evidence was outweighed by its prejudicial nature. The second motion *in limine* requested the trial court to prohibit the State from introducing evidence (1) defendant had been prescribed Suboxone before the date the offense was alleged to have occurred; (2) he was questioned by police and told police he had been prescribed Suboxone on May 6, 2012, and had been previously prescribed Suboxone; (3) he told police he had "last been prescribed" Suboxone "1½ to 2 years" before the alleged offense; and (4) records would indicate defendant's "last" Suboxone prescription "had been written during the last three months of 2011." Defendant asserted his statements and these records were "collateral" and could not be used as an exception to the hearsay rule. In April 2013, after a hearing, the court granted defendant's motions *in limine*.

¶ 2        The State argues the trial court erred when it granted defendant's motions *in limine*. The State argues the court erroneously concluded the indictment did not encompass the acts of defendant administering, giving, or providing Suboxone to the child. It argues evidence of defendant's drug addiction is (1) part of the continuing narrative of the events giving rise to the offense, (2) admissible to show his state of mind, and (3) relevant to its ability to inquire on cross-examination whether Suboxone affected defendant's memory and ability to recall events of the crime. We reverse and remand for further proceedings.

## I. BACKGROUND

In August 2012, a McLean County grand jury indicted defendant for endangering the life of a child (720 ILCS 5/12-21.6(a) (West 2010)). The indictment stated as follows:

> "[D]efendant willfully caused the life of [L.S.], a child under the age of 18 years, to be endangered in that the defendant placed the child in proximity to or permitted access to the drug Suboxone, a controlled substance, and said proximity to or access to the Suboxone was the proximate cause of the death of [L.S.]"

### A. Suboxone

Suboxone is a brand-name prescription drug. It contains buprenorphine and naloxone.

### B. Defendant's Motions *in Limine*

In February 2013, defendant filed two motions *in limine*. The first motion stated the State had evidence, including (1) defendant's "history of prior substance abuse," (2) "defendant sought treatment for substance abuse/addi[c]tion," (3) defendant was prescribed "on more than one occasion a medication known as Suboxone," (4) defendant "was prescribed Suboxone on the day before the death of his minor daughter which gives rise to this charge," and (5) the May 6, 2012, Suboxone prescription was "issued due to the defendant's 'relapse' (usage of non-prescribed drugs) shortly before the date on which this offense is alleged to have occurred." Defendant argued the circumstances behind the Suboxone prescription were "irrelevant and immaterial" to the charged offense and highly prejudicial. Defendant requested the State be prohibited from "using, referring to or attempting to introduce the evidence" referenced.

The second motion *in limine* requested the trial court to prohibit the State from introducing evidence (1) defendant had been prescribed Suboxone before the date the offense was alleged to have occurred; (2) defendant was questioned by police and "stated to police that he had been prescribed Suboxone on May 6, 2012, and had previously been prescribed Suboxone in the past"; (3) defendant told police he had "last been prescribed" Suboxone "1½ to 2 years" before the alleged offense; and (4) records would indicate defendant's "last" Suboxone prescription "had been written during the last three months of 2011." Defendant asserted his statements and these records were "collateral" and could not be used as an exception to the hearsay rule, namely as an admission against interest or a false exculpatory statement. Defendant requested the State be prohibited from "using, referring to or attempting to introduce the evidence" referenced.

### C. The Motion *in Limine* Hearing

In April 2013, the trial court held a hearing on defendant's motions *in limine*. Defense counsel informed the court the parties agreed to the following facts: (1) Suboxone is used to treat persons with opiate addiction or dependence; (2) defendant sought treatment for opiate addiction in 2011 and 2012; (3) as a result of his treatment he was prescribed Suboxone; (4) he had been prescribed Suboxone on May 6, 2012; (5) defendant was in possession of Suboxone on May 7, 2012; (6) the victim, L.S., was a one-year-old child and defendant's daughter; (7) she was taken to the hospital on May 7, 2012, and died; (8) a toxicology report showed Suboxone in her system; and (9) L.S. died as a result of Suboxone intoxication.

¶ 12    Defense counsel argued, in relevant part, as follows:

"The State did certain research, did conduct interviews of persons, and found [out] about that history of substance abuse, *** found out about the prescription of the medication, and has that body of knowledge, and they're ready to present that at trial. The problem that I see with a number of things that are set forth in the first motion *in limine* is the following: A history of prior substance abuse, in reality, exists on the part of the defendant; that he sought treatment for that substance abuse is available to the State; that he was prescribed the medication, Suboxone; that he was prescribed that the day before; that all of these things really are not relevant to the charges that are pending in this case. To put someone on the stand to say, [']here's what Suboxone is commonly used for, and in the case of [defendant], was used to treat a substance abuse difficulty or condition that he had,['] paints him in a manner that is so extremely prejudicial, that even if there were any relevance to that information, that it would be greatly and substantially outweighed by the prejudicial value that would attach to that.

There is no prohibition from the State introducing the testimony that [defendant] was prescribed that, that he admitted that he had that, but the purpose for which it was prescribed, I would suggest that it is irrelevant. They can certainly provide testimony that the ingredients of Suboxone, in certain dosages, can prove to be deleterious to an adult's health, or an adult's life, and certainly can prove to be fatal in the case of an infant, without the need for any reference to [defendant] having those conditions that were precedent to him receiving or obtaining the prescription on that date. ***

As to the second motion *in limine*, *** what I am saying in that motion is, that even if the defendant misspoke, or said something that was inconsistent as to when he had last been prescribed Suboxone before [May] 2012, it's a collateral issue, and it is not something that is indicative of any hearsay exception that ought [to] be allowed at trial in this cause. *** Whether or not [defendant] was prescribed [Suboxone] six months before May of 2012, or three years before May of 2012, really is of no import, and does nothing to get us closer to an answer of the issues that will be contained in the instructions given to the jury for this charge."

Counsel argued defendant's alleged inconsistent statement was about a collateral matter and whether he was prescribed Suboxone "six months before May of 2012, or three years before May of 2012, really is of no import."

¶ 13    The State responded it sought to introduce evidence about defendant's substance-abuse treatment and Suboxone prescription to show (1) defendant's opportunity to have possession, (2) his identity, (3) absence of mistake or accident, and (4) intent of willfully providing Suboxone to L.S. The State stated police searched defendant's residence on May 7, 2012, and did not discover evidence of the medication. The State asserted there is "an important question about where that Suboxone was on that date and time, and why it wasn't there." The State added defendant's spouse examined the Suboxone bottle on May 7, 2012, and "she saw a certain pill inside that pill bottle" and "what she found in that pill bottle is important." Evidence would be presented to show L.S. was not feeling well on May 7, 2012. The State articulated its theory that defendant, "who took this medicine that made him feel better, possibly felt that it would make [L.S.] feel better, and *** that he provided her with a certain amount of that drug."

¶ 14    Defense counsel responded "absolutely nothing" in the discovery materials showed defendant gave Suboxone to L.S. The following exchange occurred:

> "THE COURT: Well, there's no charge to support that at this point as well, nor is it one of the issues or elements of the charge that has been filed.
>
> [DEFENSE COUNSEL]: That's correct, [Y]our Honor. That theory, if it were to be born[e] out in any fashion by evidence, you'd be looking at a charge of murder, as opposed to a charge of endangering the life or health of a child.
>
> THE COURT: Or some lesser mental state other than murder."

¶ 15    ## D. The Trial Court's Order

¶ 16    The trial court, in relevant part, announced its order as follows:

> "There[ is] nothing in this charge that would indicate that the defendant administered the drug, or in some manner specifically would have provided in essence this controlled substance. And so that is a relevant factor from the Court's standpoint.
>
> *** [U]nder the circumstances, what we have, and I guess my suggestion is that the information, with reference to the defendant having been prescribed, and there is no dispute that he was, in fact, prescribed a legal, meaning with a prescription, controlled substance, that being Suboxone, that that cuts both ways, or could cut both ways with the jury, that being that Suboxone is a medically assisted treatment. And an individual who has been prescribed Suboxone means that they're addressing their addiction. That they're addressing their addiction, that being through means of accessing, that being not just treatment per se, that being from a counseling standpoint, but also medically assisted treatment. So a jury could go ahead and say, [']well, that's a good thing, that this individual was under the care of a doctor, and received a doctor's prescription.['] On the flip side, we know then that the jury would be hearing about an addiction, that being to opiates of some kind, and that this is a component in essence of the treatment regimen that the defendant had been subjected to, or was involved with, to be more specific, at the time of this incident.
>
> You know, we could go ahead and touch upon this in *** *voir dire*, and I thought about doing that, but the reality of it is that it really doesn't matter. And when I'm saying, [']it really doesn't matter,['] I[ am] agreeing with the defendant as far as the motioning, which is, if the defendant had a legal right to this substance, which was a controlled substance, the purpose for which he was prescribed that controlled substance that was legally in his possession, is irrelevant and it could or might lead to prejudice as it would relate to the defendant if the jury heard that this particular controlled substance, which he had a right to possess, was for a particular purpose as it relates to his present and/or past of having challenges with a drug addiction.
>
> So while the drug itself, in essence, can and will be allowed to be utilized, clearly by the State, with respect to the defendant having it in his possession, that it was a drug that contained a substance or substances, which clearly, from both counsel's perspective, did cause the death of this child, the purpose for which the prescription drug, Suboxone, was prescribed to the defendant, is irrelevant, and the motion *in limine* will be granted, as it relates to that particular component.

As to the other matter, that being *** whether it was for the previous prescription 9 months before, or 18 to 24 months before, irrelevant, immaterial, and impeachment on the collateral matter. The fact that he had been prescribed it, you know, previously, that's what everybody agrees on, I don't think that the difference of whether it was 9 months or 15 months, *** amounts to impeachment on a collateral matter, meaning it would not be impeachment on a substantive matter with the prior inconsistent statement that would be impermissible, under the rules of evidence, that being for hearsay exceptions.

The last item, just to go ahead and touch, you know, base upon this, which is, I'm looking at [Illinois Pattern Jury Instructions, Criminal, No.] 3.14, and that being, I can't honestly see where the evidence of a prior bad act, *i.e.*[,] drug usage, how that would be relevant in any way, shape, or form, on any of the issues, whether it be identification, presence, intent, motive, design, knowledge. The only purpose for which this would be introduced would be propensity, which is inadmissible, which is inappropriate, and so I'm not finding that that information or evidence is relevant for any purpose as well.

So i[n] essence, both of the defendant's motions *in limine* will be allowed."

¶ 17    The State immediately requested the trial court to reconsider its ruling and stated the court had "basically gutted [its] case." The court reiterated its ruling and stated "it stretches the imagination to go ahead and take the words, [']permitted access[,'] to include, administered or gave. *** But under, again, this charge that has been launched, that information is irrelevant, and immaterial, and [the] motion *in limine* is granted."

¶ 18                                    E. The State's Notice of Appeal

¶ 19    In April 2013, the State filed a notice of appeal stating the trial court's grant of defendant's first and second motions *in limine* "substantially impair[ed]" its ability to prosecute.

¶ 20                                              II. ANALYSIS

¶ 21                    A. The State's Failure To File a Certificate of Impairment

¶ 22    Illinois Supreme Court Rule 604(a)(1) (eff. Feb. 6, 2013) allows the State to bring an interlocutory appeal from a pretrial evidentiary order which has the "substantive effect" of suppressing evidence. *People v. Drum*, 194 Ill. 2d 485, 489, 743 N.E.2d 44, 46 (2000). Rule 604(a)(1) requires the State to certify to the trial court the court's ruling substantially impairs the State's ability to prosecute. *People v. Young*, 82 Ill. 2d 234, 247, 412 N.E.2d 501, 507 (1980); *People v. Carlton*, 98 Ill. 2d 187, 193, 455 N.E.2d 1385, 1388 (1983). Illinois Supreme Court Rules, including case-law interpretations of them, "are not mere suggestions" and "have the force of law." *People ex rel. Alvarez v. Skryd*, 241 Ill. 2d 34, 39, 944 N.E.2d 337, 341 (2011). "[T]he presumption must be that they will be obeyed and enforced as written." *Id.*

¶ 23    The State acknowledges it did not file a certificate of impairment and asserts its notice of appeal satisfies Rule 604(a). In *People v. Kantowski*, 98 Ill. 2d 75, 78, 455 N.E.2d 1379, 1380 (1983), the State did not initially file a certificate of impairment but then filed, in the supreme court, a motion for leave to supplement the record and file a certificate of impairment. The supreme court found this court's ruling in *People v. Jones*, 102 Ill. App. 3d 238, 429 N.E.2d 1094 (1981), convincing and concluded the certificate of impairment is not a jurisdictional requisite and allowed the State to supplement the record and file the certificate. *Kantowski*, 98

Ill. 2d at 79, 455 N.E.2d at 1381. In *Jones*, the State did not file a certificate of impairment in the trial court but sought to file it in the appellate court after it had filed the notice of appeal. *Jones*, 102 Ill. App. 3d at 239, 429 N.E.2d at 1096. This court looked to Illinois Supreme Court Rule 329 (eff. Jan. 1, 1967) and stated "[t]he certificate of impairment reflects merely the State's decision to appeal the suppression order and is properly considered an omission in the record." *Jones*, 102 Ill. App. 3d at 242, 429 N.E.2d at 1099. The State was allowed to supplement the record and file the certificate of impairment in the appellate court. *Id.* at 245, 429 N.E.2d at 1101. Because the certificate of impairment is not a jurisdictional requisite, the State's failure to file a certificate does not deprive this court of the jurisdiction to hear the merits of this appeal. See *Kantowski*, 98 Ill. 2d at 79, 455 N.E.2d at 1381.

¶ 24    Our next question is whether we should decline to consider the merits because the State has not filed a certificate of impairment in accordance with Rule 604(a). After the trial court's ruling on defendant's motions *in limine*, the State asked the court to reconsider because its ruling "basically gutted [its] case." This oral representation informed the trial court its ruling substantially impaired the State's ability to prosecute. In the notice of appeal, the State stated the trial court's ruling "substantially impair[ed] [its] ability to prosecute." Defendant does not allege he is prejudiced by the State's noncompliance with Rule 604(a). Although the proper practice is to file a written certificate of impairment with the trial court, in light of defendant's failure to allege prejudice and the State's representations before the trial court and its notice of appeal, we conclude Rule 604(a)'s requirements have been met. We therefore proceed to the merits.

¶ 25                    B. Standard of Review and Motions *in Limine*

¶ 26    A motion *in limine* is addressed to a trial court's power to admit or exclude evidence. *People v. Williams*, 188 Ill. 2d 365, 369, 721 N.E.2d 539, 542 (1999). Motions *in limine* are used to bring the trial court's attention to potentially irrelevant, inadmissible, or prejudicial evidence and obtain a pretrial order from the court excluding or permitting the evidence. *People v. Owen*, 299 Ill. App. 3d 818, 822, 701 N.E.2d 1174, 1177 (1998). The court's evidentiary ruling is reviewed for an abuse of discretion. *People v. Pikes*, 2013 IL 115171, ¶ 12, 998 N.E.2d 1247.

¶ 27    A motion *in limine* can be a "powerful" and "potentially dangerous" weapon because it requests to restrict evidence. *Reidelberger v. Highland Body Shop, Inc.*, 83 Ill. 2d 545, 550, 416 N.E.2d 268, 271 (1981). Because a ruling on the motion can restrict evidence, the motion must be specific and allow the court and the parties to understand what evidence is at issue. See *Lockett v. Bi-State Transit Authority*, 94 Ill. 2d 66, 76, 445 N.E.2d 310, 315 (1983). While oral motions *in limine* are permitted, a written motion should be used whenever complicated or sensitive evidence is at issue. This allows the movant to carefully identify the evidence sought to be excluded and articulate his or her argument in support. A written motion prevents confusion and misunderstanding by defining the evidence at issue and capturing the movant's arguments. See *Compton v. Ubilluz*, 353 Ill. App. 3d 863, 871, 819 N.E.2d 767, 776 (2004). If nothing else, a written motion allows the parties and court to refer to a fixed version of the movant's request.

¶ 28    In resolving the evidentiary issue presented in a motion *in limine*, a trial court considers the movant's offer of proof. "[A]n offer of proof serves dual purposes: (1) it discloses to the court and opposing counsel the nature of the offered evidence, thus enabling the court to take

appropriate action, and (2) it provides the reviewing court with an adequate record to determine whether the trial court's action was erroneous." *People v. Pelo*, 404 Ill. App. 3d 839, 875, 942 N.E.2d 463, 494 (2010); see also *People v. Thompkins*, 181 Ill. 2d 1, 10, 690 N.E.2d 984, 988-89 (1998) (an offer of proof is "the key to preserving a trial court's error in excluding evidence"). An offer of proof may be formal or informal, but an informal offer of proof must identity the complained-of evidence with "particularity." *Pelo*, 404 Ill. App. 3d at 875, 942 N.E.2d at 494. An offer of proof is inadequate if it is a mere summary or "offers unsupported speculation" about the evidence. *Id.* at 876, 942 N.E.2d at 494. While an offer of proof assists the parties, the trial court, and a reviewing court in determining the evidence at issue, "a court is disadvantaged in ruling on a motion *in limine* because it is considered in a vacuum, before the presentation of the full evidence at trial that may justify admission or require exclusion." *Compton*, 353 Ill. App. 3d at 871, 819 N.E.2d at 776.

¶ 29    In *Owen*, 299 Ill. App. 3d at 823-24, 701 N.E.2d at 1178-79, this court discussed the problem of ruling on a motion *in limine* without the full evidence as follows:

"One difficulty common to all motions *in limine* is that they occur–by definition–out of the normal trial context, and resolving such a motion requires the trial court to determine what that context will be. Thus, the court must receive offers of proof consisting either of live testimony or counsel's representations that the court finds sufficiently credible and reliable. Because a motion *in limine* typically asks the court to bar certain evidence, the supreme court has deemed such motions 'powerful weapons' and has urged caution in their use. [*Reidelberger*, 83 Ill. 2d at 550, 416 N.E.2d at 271] ('Before granting a motion *in limine*, courts must be certain that such action will not unduly restrict the opposing party's presentation of its case'); *Rush v. Hamdy*, 255 Ill. App. 3d 352, 365, 627 N.E.2d 1119, 1127 (1993) (motions *in limine* precluding evidence 'should be employed with caution').

'A trial judge has discretion in granting a motion *in limine* and a reviewing court will not reverse a trial court's order allowing or excluding evidence unless that discretion was clearly abused.' *Swick v. Liautaud*, 169 Ill. 2d 504, 521, 662 N.E.2d 1238, 1246 (1996). Similarly, depending upon the nature of the evidentiary issue before it, the court has vast discretion as to how it will conduct the hearing on a motion *in limine*–that is, requiring live witnesses or representations, affidavits, or whatever–and the court has vast discretion as to how detailed such a hearing will be, as well.

For the same reasons that the supreme court has ruled that trial courts have discretion before granting a motion *in limine*–namely, because such motions constitute 'powerful weapons,' they must be exercised with caution–we hold that trial courts also possess the discretion to choose not to entertain a motion *in limine* at all. That is, a court is fully justified to exercise its discretion by telling the moving party that–*for whatever reason*–the court chooses not to entertain the party's motion *in limine* and instead will require the evidence in question, if it is to be offered at all, to be presented in the normal course of things during trial. The court will then make its ruling upon the evidentiary question at issue when the matter has become ripe, assuming it ever does.

We so hold because, if the court must 'balance the prejudice that might be avoided if it grants the motion against the complication or inconvenience that would result if the motion is denied' (*Rush*, 255 Ill. App. 3d at 365, 627 N.E.2d at 1127), a court might

easily conclude that the best way to ensure a correct ruling on a complicated evidentiary issue is to wait for that issue to become ripe at trial. Then the court would no longer need speculate about what the trial evidence *might be*; instead, the court has already heard that evidence, and the context in which to decide the evidentiary issue has become clear. As Professor Graham has noted, the most appropriate response to a motion *in limine*, instead of conducting a hearing on its merits, may be to defer the issue to such time, if ever, that the issue is presented at trial, while issuing 'an order requiring that the matter be brought to the attention of the court prior to being disclosed in any fashion to the jury.' [Michael H. Graham, Cleary & Graham's Handbook of Illinois Evidence § 103.9, at 30 (6th ed. 1994)].

Given the uncertainties that are inherent with any motion *in limine*, it is difficult to envision a situation in which a trial court would abuse its discretion by choosing not to entertain the motion and instead requiring that the matter be presented and resolved at trial. Although we have trouble envisioning what might constitute an abuse of such discretion, we have no difficulty in determining what does not: denying a motion *in limine* on the ground that it is untimely or on the ground that resolving it might take too much time cannot constitute an abuse of the trial court's discretion." (Emphases in original.)

¶ 30    "Because the trial court rules on a motion *in limine* before hearing the full evidence at trial, trial courts should be cautious in making broad rulings on motions *in limine*." *People v. Brown*, 319 Ill. App. 3d 89, 96, 745 N.E.2d 173, 181 (2001). The Second District has elaborated further and stated:

"Trial judges should attempt to enter narrow *in limine* orders, anticipate proper evidence that might be excluded by the orders, and make the orders clear and precise so that all parties concerned have an accurate understanding of their limitations. An unclear order *in limine* is worse than no order at all ***." *Compton*, 353 Ill. App. 3d at 871, 819 N.E.2d at 776.

The court's "order should be in writing to prevent confusion and misunderstanding." *Id.* Any "*in limine* order [must] be clear and *** [provide] all parties concerned *** [with] an accurate understanding of its limitations." *Reidelberger*, 83 Ill. 2d at 550, 416 N.E.2d at 271.

¶ 31    To summarize, a motion *in limine* is a powerful weapon used to obtain an evidentiary ruling before trial. The motion and offer of proof must identify, with particularity, what evidence the movant seeks to be excluded. Speculative offers of proof are not sufficient. The trial court has vast discretion in considering the motion and may decline to entertain the motion. The court must be cautious in making its ruling and should announce its ruling in a written order. The order must be clear and articulate its limitations.

¶ 32                          C. Understanding the Trial Court's Ruling

¶ 33    The record, the briefs, and the parties' oral arguments reveal one constant: confusion about the trial court's *in limine* order. To understand the extent of the trial court's ruling, it is necessary to determine the scope of defendant's motions *in limine*. Defendant's first written motion *in limine* requested the State be prohibited from introducing evidence of defendant's substance-abuse "history"; his substance-abuse "treatment"; his "relapse"; and the "circumstances leading up" to the May 6, 2012, Suboxone prescription. Then, at the motion *in limine* hearing, defense counsel framed his request as prohibiting the State from introducing

evidence about the "purpose" for the Suboxone prescription. Counsel asserted evidence Suboxone is commonly used to treat opiate addiction and was used to treat defendant was "extremely prejudicial." Defendant's second written motion *in limine* requested the State be prohibited from introducing evidence defendant was prescribed Suboxone before May 7, 2012; he told police investigators he had been prescribed Suboxone on May 6, 2012, and he told police he had "last" been prescribed Suboxone "1½ to 2 years" before May 2012.

¶ 34 Before this court, defendant has framed his motions *in limine* as requesting exclusion of evidence of his "status" as a drug addict. But his requests in the trial court extended beyond the fact he is an addict. Defendant's varied language includes several identifiable and distinct pieces of evidence, including the following: he (1) has a substance addiction; (2) sought treatment for his substance addiction; (3) had a relapse shortly before May 6, 2012; (4) sought treatment for this relapse; (5) was prescribed Suboxone as treatment for this relapse; (6) filled the Suboxone prescription on May 6, 2012; (7) previously had been prescribed Suboxone; and (8) made a statement to the police concerning his "last" Suboxone prescription. Defendant also sought to preclude evidence of Suboxone's "purpose." Defendant sought to exclude far more than evidence he has a drug addiction. He sought to broadly prohibit any evidence relating to his opiate addiction, including evidence about his substance-abuse history, substance-abuse treatment, relapse, Suboxone prescriptions, and the "purpose" for the prescriptions.

¶ 35 The trial court immediately ruled on defendant's motions *in limine* and found "the purpose for which the prescription drug, Suboxone, was prescribed to the defendant" was irrelevant. We acknowledge the court initially stated it granted defendant's first motion *in limine* "as it relates to that particular component." However, the court continued announcing its order and twice stated it granted, without limitation, the motions *in limine*. The court could have taken a different approach. One approach could have been to reject defendant's offer of proof. Defendant's informal offer of proof was the State had a "body of knowledge" about defendant's "history of substance abuse" and the Suboxone prescription. This informal offer of proof is inadequate because it does not identify with particularity what evidence defendant is seeking to exclude. Another approach could have been to require defendant to further clarify his motions. Did he seek to exclude *everything* about his substance abuse "history," "treatment," and "relapse," as his written motions suggest? What did defendant mean, when he argued at the motion hearing, that the State should be prohibited from introducing evidence about "the purpose for which [Suboxone] was prescribed"? Did this refer to the general purpose of Suboxone–to treat opiate addiction–or its specific purpose–to treat *defendant's* opiate addiction and recent relapse? Answers to these questions would have helped illuminate defendant's requests. A third approach, as discussed in *Owen*, could have been for the court to decline to entertain defendant's motions. The court could have concluded a ruling would be premature because it needed additional development of the evidence to understand how this particular evidence fit into the case, or the evidence was in flux because the parties were still engaged in discovery. The court's decision to immediately rule on the motions, without limitation, resulted in an order which does not serve to give the parties an "accurate understanding of its limitations." *Reidelberger*, 83 Ill. 2d at 550, 416 N.E.2d at 271. Because defendant made a broad request and the trial court did not specifically limit its order, we understand the trial court's order to prohibit all the evidence outlined above.

¶ 36 We note the State uses the phrases "evidence of defendant's drug addiction" and "defendant's drug addiction" in its argument. Considering the broad scope of defendant's

motions and the trial court's unlimited ruling, we understand the State's phrases "evidence of defendant's drug addiction" and "defendant's drug addiction" to be shorthand for all the pieces of evidence implicated by defendant's motions *in limine*. This would include evidence of defendant's substance-abuse history, substance-abuse treatment, prior use of Suboxone, the May 6, 2012, Suboxone prescription, and the purpose of the Suboxone prescription. We use the phrase "evidence of defendant's drug addiction" in this manner.

¶ 37                              D. The State's Indictment Argument

¶ 38        In announcing its ruling, the trial court explained the indictment stated defendant willfully placed L.S. "in proximity to or permitted access to the drug Suboxone" and did not allege he "administered" or "provided" Suboxone to L.S. The State argues the court erroneously concluded the charging language did not encompass the acts of defendant administering, giving, or providing Suboxone to L.S. It urges us to conduct a statutory-interpretation analysis and conclude the indictment's language "permitting access to" encompasses "administer" or "give."

¶ 39        Section 12-21.6 of the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/12-21.6(a) (West 2010)) provides, in relevant part, as follows:

> "It is unlawful for any person to willfully cause or permit the life or health of a child under the age of 18 to be endangered or to willfully cause or permit a child to be placed in circumstances that endanger the child's life or health ***."

The "permitted access to" language does not appear in section 12-21.6 of the Criminal Code; this language only appears in the indictment. A charging instrument is required to set forth the "nature and elements of the offense." 725 ILCS 5/111-3(a)(3) (West 2012); *People v. Collins*, 214 Ill. 2d 206, 219, 824 N.E.2d 262, 269 (2005) ("Where an indictment charges all essential elements of an offense, other matters unnecessarily added may be regarded as surplusage."). Defendant filed a motion *in limine*, not a motion challenging the indictment. See 725 ILCS 5/114-1 (West 2012) (motion to dismiss charge). Because this is an interlocutory appeal, we are cautious about assessing the State's choice of language in crafting the indictment. It is well established the State's Attorney is vested with the exclusive discretion in the initiation and management of criminal litigation. *People ex rel. Daley v. Moran*, 94 Ill. 2d 41, 45, 445 N.E.2d 270, 272 (1983); 55 ILCS 5/3-9005 (West 2012). This discretion includes whether to initiate prosecution, what charges should be brought, including in circumstances where the same conduct could be charged under different statutes, and whether to dismiss those charges. *People v. White*, 2011 IL 109616, ¶ 25, 953 N.E.2d 398; *People v. Van Schoyck*, 232 Ill. 2d 330, 339, 904 N.E.2d 29, 34 (2009); *People v. Rhodes*, 38 Ill. 2d 389, 396, 231 N.E.2d 400, 403 (1967); *People v. Perry*, 224 Ill. 2d 312, 339, 864 N.E.2d 196, 213 (2007); *People v. Jamison*, 197 Ill. 2d 135, 161-62, 756 N.E.2d 788, 802 (2001). Moreover, as the State's investigation continues and it prepares for trial, the State may uncover additional information leading it to alter the current charge or add new charges. See *United States v. Goodwin*, 457 U.S. 368, 381 (1982) (noting a pretrial decision to modify charges may be a result of the prosecutor's assessment not being "crystallized" at such an early stage in the proceedings). It is within the State's Attorney's discretion whether he or she amends or dismisses the current charge, files new charges, or declines to prosecute defendant, and it would be inappropriate for this court to suggest how the State's Attorney should charge defendant. See *People v. Russell*, 237 Ill. App. 3d 310, 313, 604 N.E.2d 420, 422 (1992). We decline to express any opinion

- 11 -

about the appropriateness of the particular charge or the indictment's language.

¶ 40                                       E. The State's Motion *in Limine* Claims

¶ 41    The State argues the trial court abused its discretion in granting defendant's motions *in limine*. Specifically, the State argues evidence of defendant's drug addiction is (1) part of the continuing narrative of the events giving rise to the offense; (2) admissible to show his state of mind, in particular his familiarity with Suboxone and its effects; and (3) relevant to its ability to inquire on cross-examination whether Suboxone affected defendant's memory and ability to recall the events in question.

¶ 42                                       1. *Other-Crimes Evidence, Generally*

¶ 43    Generally, evidence is admissible if it is relevant. Ill. R. Evid. 402 (eff. Jan. 1, 2011). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ill. R. Evid. 401 (eff. Jan. 1, 2011). Relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice" or if another rule of evidence excludes the evidence. Ill. R. Evid. 403 (eff. Jan. 1, 2011).

¶ 44    "It is well settled under the common law that evidence of other crimes is admissible if relevant for any purpose other than to show a defendant's propensity to commit crimes." *People v. Chapman*, 2012 IL 111896, ¶ 19, 965 N.E.2d 1119; Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). Evidence concerning the facts and circumstances of the crime the defendant is accused of committing is not other-crimes evidence. *People v. Nieves*, 193 Ill. 2d 513, 531, 739 N.E.2d 1277, 1286 (2000) (quoting *People v. King*, 29 Ill. 2d 150, 154, 193 N.E.2d 790, 792 (1963)). In *Pikes*, the supreme court explained the other-crimes evidence rule as follows:

> "The rule that evidence of the commission of other crimes, wrongs, or acts by the accused is inadmissible for the purpose of showing a propensity to commit crimes is an aspect of the rule that the prosecution may not introduce evidence of a character trait of the accused. [Citation.] The concern is not that such evidence is lacking in probative value, but that it may overpersuade the jury, which might convict the accused because it believes he or she is a bad person." *Pikes*, 2013 IL 115171, ¶ 16, 998 N.E.2d 1247.

Permissible purposes for other-crimes evidence include motive, intent, identity, lack of mistake, and *modus operandi*. *Chapman*, 2012 IL 111896, ¶ 19, 965 N.E.2d 1119; see also *People v. Boand*, 362 Ill. App. 3d 106, 124-25, 838 N.E.2d 367, 386-87 (2005). Where other-crimes evidence is offered for a permissible purpose, it will not be admitted if its prejudicial impact outweighs its probative value. *Chapman*, 2012 IL 111896, ¶ 19, 965 N.E.2d 1119.

¶ 45                                       2. *The State's Continuing-Narrative Argument*

¶ 46    The State argues evidence of defendant's drug addiction is admissible because it is part of a continuing narrative of the charged offense. As discussed above, we understand and use "evidence of defendant's drug addiction" as a shorthand for all the evidence implicated by defendant's motions *in limine*. The State asserts evidence of defendant's drug addiction is "inextricably intertwined" with L.S.'s death as it explains his possession of Suboxone and it furnishes a "back story" to assist the trier of fact in understanding the circumstances of the

offense. Defendant argues the State has forfeited this argument because it did not present it before the trial court.

¶ 47   Generally, issues not raised before the trial court are forfeited on appeal. This principle applies to the State as well as a criminal defendant. *People v. O'Neal*, 104 Ill. 2d 399, 407, 472 N.E.2d 441, 444 (1984); *People v. Galan*, 229 Ill. 2d 484, 499, 893 N.E.2d 597, 606 (2008). The record shows the State presented various arguments at the motion *in limine* hearing. It argued defendant's recent relapse and the May 6, 2012, Suboxone prescription provided important information preceding the offense. While the State did not develop its argument as fully as it has on appeal and did not articulate its argument in the trial court using the phrase "continuing narrative," it has not forfeited this argument.

¶ 48   Evidence of other crimes or bad acts may be "admissible if it is part of a continuing narrative of the event[s] giving rise to the offense, intertwined with the charged offense, or explains an aspect of the charge which would otherwise be implausible or inexplicable." *People v. Patterson*, 2013 IL App (4th) 120287, ¶ 58, 2 N.E.3d 642. As the supreme court explained in *Pikes*, events forming a continuing narrative, even if they reflect negatively on the defendant, are permitted because the events are "linked and it would be illogical for the trial court to uncouple them and give the jury only half the story." *Pikes*, 2013 IL 115171, ¶ 24, 998 N.E.2d 1247. Illinois courts have permitted evidence of a defendant's prior narcotic use as part of a continuing narrative of the events preceding the crime. *People v. Thompson*, 2013 IL App (1st) 113105, ¶ 102, 997 N.E.2d 681 (evidence of defendant's drug use explained events preceding shooting); *Patterson*, 2013 IL App (4th) 120287, ¶ 67, 2 N.E.3d 642 (evidence about defendant's marijuana use was part of his account of the argument preceding the murder); *People v. Norwood*, 362 Ill. App. 3d 1121, 1130, 841 N.E.2d 514, 523-24 (2005) (defendant's drug use provided background for a dispute which escalated to murder); *People v. Spyres*, 359 Ill. App. 3d 1108, 1114, 835 N.E.2d 974, 978-79 (2005) (evidence about previous cannabis shipments were relevant to show defendant engaged in drug trafficking).

¶ 49   Suboxone's role in defendant's substance-abuse treatment and in causing L.S.'s death must be differentiated. Evidence about Suboxone is evidence about the alleged crime because L.S. died as a result of Suboxone overdose. Evidence about Suboxone such as its (1) ingredients, (2) forms (*i.e.*, oral, injection, transdermal), (3) packaging, (4) storage, (5) side effects, (6) required warnings and information, (7) approved uses, (8) common uses (*i.e.*, off-label uses), (9) use to treat young children, and (10) harmful effect on young children is relevant to this case because L.S. died from Suboxone overdose. It is also relevant to know whether L.S. was prescribed Suboxone or any other medication which could have had an adverse reaction with Suboxone.

¶ 50   Evidence about what Suboxone is approved and commonly used to treat is distinct from evidence Suboxone was used to treat defendant's opiate addiction. The record does not contain any information about other uses, but at oral argument defense counsel suggested Suboxone has uses other than to treat opiate addiction. The trial court did not request additional information about Suboxone's uses or draw a distinction between its approved and common uses and its use to treat defendant. Had it done so, it could have considered whether evidence about Suboxone's approved and common uses reduce the potential prejudice of evidence defendant's Suboxone prescription was used to treat his opiate addiction.

¶ 51   Evidence about defendant's substance-abuse history and substance-abuse treatment presents more complicated questions. It is important to separate the events in defendant's

substance-abuse history and substance-abuse treatment from the underlying cause of these events–defendant's opiate addiction. Our question is whether evidence about defendant's substance-abuse history and substance-abuse treatment is relevant for any purpose other than to show defendant's propensity to commit crime. See Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). Evidence about defendant's substance-abuse history could be quite broad and could include details ranging from his introduction to drugs, all the drugs he has ever used, who he associates with while using drugs, and where he has purchased the drugs. Evidence about defendant's substance-abuse treatment would be narrower and could include details about the medical assessments, diagnosis, services, and care he has received. The essential question is whether any of this evidence is relevant. Does it have a tendency to show it is more or less probable defendant committed the alleged crime? See Ill. R. Evid. 401 (eff. Jan. 1, 2011). Obviously, not every detail about defendant's substance-abuse history and substance-abuse treatment is relevant to this case. See *Brown*, 319 Ill. App. 3d at 96, 745 N.E.2d at 181 (advising against "minitrials" about the other-conduct evidence). But *some* details could have a tendency to show it is more or less probable defendant committed the alleged crime. The State argues evidence about defendant's previous Suboxone prescriptions, recent relapse, and the May 6, 2012, Suboxone prescription are relevant to the alleged crime. We agree. Defendant's previous Suboxone prescriptions are relevant to show his experience with the medication, which goes to his knowledge of its attributes, appropriate uses, side effects, proper storage, and potential harm to children. Evidence defendant was prescribed Suboxone on or before May 6, 2012, and he filled the prescription on May 6, 2012, one day before L.S.'s death, is relevant to the charged offense as it tends to show he had possession of Suboxone in close temporal proximity to when L.S. overdosed from Suboxone. It also goes to the amount he had in his possession (*i.e.*, he was prescribed X amount and should have had Y amount in his possession on May 7, 2012). Evidence about defendant's relapse is relevant because it occurred close to the time of L.S.'s death and could show defendant, at the time of the alleged offense, was impaired by the effects of the relapse, withdrawal, or treating medications. Thus, some of the details in defendant's substance-abuse history and substance-abuse treatment are relevant, but what about the underlying cause of these events–defendant's opiate addiction?

¶ 52    Drug addiction is more than mere drug use; it encompasses the compulsive use of a substance and can include a physical dependence on the substance. See generally 20 ILCS 301/1-10 (West 2012) (defining "addiction" for purposes of the Alcoholism and Other Drug Abuse and Dependency Act). The individual's addiction may affect his behavior, social interaction, and choices about engaging in risky situations. See generally 720 ILCS 570/102 (West 2012) (defining "addict" for purposes of the Illinois Controlled Substances Act as a person whose use of a controlled substance has "lost the power of self control with reference to his or her addiction"); *Robinson v. California*, 370 U.S. 660, 667 (1962) (noting "narcotic addiction is an illness"). It is a complex problem that can reach into all corners of the addict's life.

¶ 53    The State argues the fact defendant has an opiate addiction assists to explain why he would be in possession of Suboxone, he would carry Suboxone on his person, and the drug was not found in a search of his residence after L.S.'s death. Defendant responds it is not necessary for the trier of fact to learn why a person "needs" a prescription medication "to properly understand that a child somehow gained access to it." We disagree with any suggestion potentially prejudicial evidence should be excluded because the trier of fact can fill in the

- 14 -

blanks with speculation. This is not the law. See Ill. R. Evid. 403 (eff. Jan. 1, 2011) ("evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice").

¶ 54    Defendant's opiate addiction is relevant to his access to this particular prescription medication. Defendant obtained Suboxone through a prescription, but because he obtained this controlled substance through approved channels does not mean *why* he obtained it is not relevant. Defendant disagrees the legitimate medical reason for a prescription medication can be relevant. He presents a hypothetical in which the child dies from an overdose of Vicodin and asserts, under the State's theory, the child's access would be "inexplicable without presenting evidence that [the child's parent] just had surgery." A person's legitimate medical reason for a certain prescription may not always be relevant, but it could be relevant. Relevancy is about *any* tendency to prove or disprove a fact of consequence. See Ill. R. Evid. 401 (eff. Jan. 1, 2011). It is common knowledge a prescription medication can be prescribed to treat various conditions; persons may use a medication for nonprescribed purposes; and persons may use the medication in an amount exceeding the dosage needed to treat the condition for which it was prescribed. Defendant's hypothetical fails to provide adequate context to determine whether the fact the parent had surgery was not relevant. Evidence the parent had a legitimate medical purpose for the Vicodin prescription could be relevant to his possession of the particular controlled substance. Vicodin contains hydrocodone, which is a schedule II controlled substance. See 720 ILCS 570/206(b)(1)(x) (West 2012). A schedule II classification indicates "the substance has [a] high potential for abuse" and "the abuse of the substance may lead to severe psychological or physiological dependence." 720 ILCS 570/205(1), (3) (West 2012). The fact the parent had surgery shows he had a legitimate medical purpose for Vicodin, which could be relevant to show the parent was informed of what Vicodin should be used to treat–pain caused by the surgery. Further, because Vicodin has a high potential for abuse, the fact the child's parent had been prescribed Vicodin for a legitimate medical purpose could be relevant if there was evidence the parent exceeded the prescribed dosage amount or was using Vicodin for nonlegitimate purposes, *i.e.*, the parent initially had a legitimate reason for Vicodin but was now abusing it and not taking appropriate safeguards to prevent the child's access. Defendant's hypothetical does little to show the medical purpose for a prescription medication is never relevant. Here, the fact defendant has an opiate addiction explains why he has this particular controlled substance in his possession. He had a legitimate medical reason for Suboxone–to treat his opiate addiction. The fact defendant has an opiate addiction has a tendency to show he was informed of the legitimate uses for Suboxone: he could use it to treat his opiate addiction. His opiate addiction could be relevant to his usage of Suboxone, such as whether he overused it, provided it to others, or stored it in a careless manner. We agree with the State: defendant's drug addiction can be relevant to explain certain aspects of his behavior. Defendant's opiate addiction could explain his behavior in carrying the drug on his person. The alleged fact defendant carried Suboxone on his person is highly relevant to L.S.'s ability to access the drug. If defendant carried it on his person it is more likely he permitted her access. As discussed below, the fact Suboxone was not found in defendant's residence could go toward his state of mind. In sum, evidence Suboxone was prescribed to treat defendant's opiate addiction provides context for how defendant obtained this controlled substance and it came to be in his possession, which in turn tends to show he had access to the controlled substance and could cause or permit L.S.'s access to Suboxone.

- 15 -

¶ 55    Defendant is correct the fact he has an opiate addiction could be prejudicial, as is most evidence introduced against a criminal defendant, but the inquiry is not whether evidence is prejudicial. The question is whether the probative value of the evidence is *substantially* outweighed by the danger of *unfair* prejudice. See Ill. R. Evid. 403 (eff. Jan. 1, 2011); *People v. Jenko*, 410 Ill. 478, 482, 102 N.E.2d 783, 785 (1951) ("A party cannot have competent evidence excluded merely because it might arouse feelings of horror and indignation in the jury."). The trial court concluded the prejudicial effect would be so great it would not even consider addressing the issue in *voir dire* or using a jury instruction. Two problems arise from this conclusion. On the current record, it is impossible to determine whether the probative value of evidence defendant has an opiate addiction is *substantially* outweighed by the danger of unfair prejudice. As discussed above, in determining the potential prejudice of this evidence, one must also consider whether evidence about Suboxone's approved and common uses lessens the potential harm to defendant. Illinois Pattern Jury Instructions, Criminal, No. 3.14 (4th ed. 2000) is the appropriate jury instruction to be given to explain to the jury the limited purpose of other-crimes evidence. A limiting instruction about defendant's drug addiction would reduce the prejudice created by admitting the evidence. See *People v. Young*, 381 Ill. App. 3d 595, 601, 887 N.E.2d 649, 654 (2008) ("A limiting instruction reduces any prejudice created by admitting other-crimes evidence."). It is true, in certain circumstances, a jury instruction may not be sufficient to remove the taint created by the admission of prejudicial evidence (*People v. Bartall*, 98 Ill. 2d 294, 317, 456 N.E.2d 59, 70 (1983)), but "[f]aith in the ability of a properly instructed jury to separate issues and reach a correct result is the cornerstone of the jury system" (*People v. Illgen*, 145 Ill. 2d 353, 376, 583 N.E.2d 515, 525 (1991)). Based the evidence before the trial court, its assessment the jury could not be trusted with this evidence was premature.

¶ 56                          3. *The State's State-of-Mind Argument*

¶ 57    The State argues evidence of defendant's addiction is admissible to explain his state of mind and supports an inference of the willfulness of his conduct. It contends defendant's addiction shows his familiarity with Suboxone, its effect on him, and "whether he knew the risk of leaving it in the proximity of a one-year-old." As we discussed above, defendant's motion *in limine* sought exclusion of evidence in addition to the mere fact he has an opiate addiction, and we understand the trial court's ruling to include evidence about defendant's substance-abuse history, substance-abuse treatment, prior use of Suboxone, and the May 6, 2012, Suboxone prescription.

¶ 58    Other-crimes evidence may be relevant and admissible to prove the defendant's state of mind. *Boand*, 362 Ill. App. 3d at 124, 838 N.E.2d at 386; *People v. Robinson*, 391 Ill. App. 3d 822, 838, 909 N.E.2d 232, 248 (2009). It may be relevant to show the defendant's consciousness of guilt. *People v. Bean*, 137 Ill. 2d 65, 109, 560 N.E.2d 258, 278 (1990). Evidence about a criminal defendant's narcotic use has been found relevant to prove the defendant's intent, knowledge, and motive. See *People v. LeCour*, 273 Ill. App. 3d 1003, 1008, 652 N.E.2d 1221, 1226 (1995); *Norwood*, 362 Ill. App. 3d at 1130, 841 N.E.2d at 523-24.

¶ 59    Section 12-21.6(a) of the Criminal Code requires defendant to have acted "willfully." 720 ILCS 5/12-21.6(a) (West 2010). Section 4-5 of the Criminal Code provides the term "willfully" is synonymous with "knowledge." 720 ILCS 5/4-5 (West 2010). It adds, "[w]hen the law provides that acting knowingly suffices to establish an element of an offense, that

element also is established if a person acts intentionally." *Id.*; see 720 ILCS 5/4-4 (West 2010) (definition of "intent"). The trial court announced its ruling by discussing the particular language of the indictment. We conclude the trial court's explanation was an inartful attempt to articulate a distinction between the indictment's language and an allegation defendant intentionally caused L.S.'s death. We note immediately prior to announcing its order, the court agreed with defense counsel the indictment did not support the contention defendant gave Suboxone to L.S. and noted such an allegation would support a different charge, including one with a "lesser mental state other than murder." (As discussed above, the State's Attorney is vested with broad discretion in deciding the appropriate charge.) The trial court's explanation suggests it would permit this evidence if the State had alleged defendant acted intentionally. This is flawed. The State can prove defendant acted willfully by proving he acted intentionally.

¶ 60    The next question is whether evidence of defendant's drug addiction is relevant toward his mental state. In support, the State relies on *People v. Markiewicz*, 246 Ill. App. 3d 31, 41, 615 N.E.2d 869, 876 (1993), where the trial court permitted evidence about the defendant's drug use and proficiency in delivering intravenous injections. The State's theory was the defendant murdered the victim by repeatedly injecting her with cocaine. Evidence about the defendant's involvement with drugs and "self-proclaimed proficiency at injecting narcotics was directly relevant to the method utilized" to commit the murder. *Id.* It "eliminate[d] any speculation that [the] defendant mistakenly injected [the victim] with a fatal overdose of cocaine." *Id.* at 41, 615 N.E.2d at 877. Despite its obvious factual differences, *Markiewicz* supports the State's contention evidence of defendant's drug use is relevant. As discussed above, evidence about Suboxone is relevant because L.S. died of a Suboxone overdose. Because L.S. died of a Suboxone overdose, defendant's Suboxone use is relevant to whether he committed the charged offense. Defendant's Suboxone use is relevant to whether he knew or was aware of (1) its effects on him, (2) proper uses and storage, (3) whether Suboxone was dangerous for children, or (4) its effects on a one-year-old child. His use of Suboxone, or any other impairing substance, before or at the time of the offense is relevant to his state of mind and whether he was impaired or otherwise unfit to supervise the child.

¶ 61    The State contends defendant hid or concealed his Suboxone prescription from police on May 7, 2012, and suggests this reflects on defendant's guilty state of mind. Defendant's actions after the alleged crime can reflect upon his state of mind at the time of the offense. See *People v. Durk*, 215 Ill. App. 3d 186, 188, 574 N.E.2d 891, 893 (1991) ("a discussion of the defendant's activities after a crime has been committed is relevant to a discussion of the event itself"); *People v. Spaulding*, 309 Ill. 292, 306, 141 N.E. 196, 202 (1923) ("Evidence that the accused has attempted to destroy evidence against himself is always admissible for the purpose of showing consciousness of guilt ***."). We agree it is relevant to know what defendant did with his Suboxone prescription on May 7, 2012, and whether he attempted to conceal it from police.

¶ 62                              4. *The State's Cross-Examination Argument*

¶ 63    The State asserts evidence of defendant's drug addiction is relevant to his credibility and ability to recall the events, and it should be permitted to use it against defendant in cross-examination. See *People v. Collins*, 106 Ill. 2d 237, 270, 478 N.E.2d 267, 281 (1985) ("The question of whether a witness is a narcotics addict at the time of testifying or at the time that an event occurred is a proper subject of cross-examination because it goes to the credibility

of the witness and the witness' ability to recall."). Defendant responds this argument is premature. The State agrees, stating it is "premature, but anticipatory." The State's ability to cross-examine defendant about his impairment or ability to recall the events on May 7, 2012, will be determined by whether defendant testifies and the content of his testimony. See *People v. Patrick*, 233 Ill. 2d 62, 69, 908 N.E.2d 1, 5 (2009) ("A defendant who chooses to testify faces serious risks of impeachment and may open the door to otherwise inadmissible evidence."). We decline to consider this premature argument.

¶ 64                                                                    F. Summary

¶ 65        We agree it would violate Illinois Rule of Evidence 404(b) (eff. Jan. 1, 2011) for the State to introduce evidence defendant has a drug addiction to show his propensity to commit the charged offense. But defendant's request went further. He sought exclusion of evidence about his substance-abuse history, substance-abuse treatment, prior use of Suboxone, and the May 6, 2012, Suboxone prescription–evidence beyond the mere fact he has an opiate addiction. The trial court's unlimited grant of defendant's motions *in limine* broadly prohibited the State from introducing relevant evidence about Suboxone, defendant's Suboxone use, including his May 6, 2012, prescription, the circumstances surrounding the offense, and his state of mind. We conclude the trial court abused its discretion in granting, without limitation, defendant's motions *in limine*.

¶ 66        On remand, the trial court may (1) reconsider defendant's motions *in limine* in accordance with the views expressed herein, endeavoring to carefully consider all the discrete pieces of evidence, and issue an order which gives the parties "an accurate understanding of its limitations" (*Reidelberger*, 83 Ill. 2d at 550, 416 N.E.2d at 271); (2) require defendant to amend his motions *in limine* to be more specific and identify, with particularity, the evidence sought to be excluded; or (3) decline to entertain the motions until they are ripe for consideration.

¶ 67                                                                   III. CONCLUSION

¶ 68        We reverse the trial court's judgment and remand for further proceedings.

¶ 69        Reversed and remanded for further proceedings.